In the Matter of B & W ENTERPRISES, INC., Debtor.

In the Matter of SHOEMAKER TRUCKING CO., INC., Debtor.

B & W ENTERPRISES, INC. and Shoemaker Trucking Company, Inc., Plaintiffs,

and

Loren Wetzel, Trustee, Substituted Plaintiff,

v.

GOODMAN OIL COMPANY; Interstate Mack; Trebar, Inc., (formerly known as Boise Kenworth Sales, Inc.); Mountain Bell Telephone, Inc.; Usatab; Cummins Intermountain Idaho; Bowen Oil Co.; American Express; Global Travel; Krueger's Auto Truck Stop; Idaho Bank and Trust Co.; Caldwell Basque Charity; Idaho Power Co.; Utility Equipment Co.; Time Automotive Distributors; Ore-Ida Foods, Inc.; and Olancha Truck Stop, Defendants.

Adv. No. 81–0344.

United States Bankruptcy Court, D. Idaho.

April 13, 1982.

Green, Service, Gasser & Kerl, Pocatello, Idaho, for substituted plaintiff/trustee, Loren Wetzel.

Anderson, Kaufman, Ringert & Clark, Boise, Idaho, for defendants Goodman Oil Co. and Krueger's Auto Truck Stop.

David G. Ballard, Boise, Idaho, for defendant, Trebar, Inc.

Ellis, Brown, Sheils & Steele, Boise, Idaho, for defendant Interstate Mack, Inc.

## MEMORANDUM DECISION AND ORDER

M. S. YOUNG, Bankruptcy Judge.

Plaintiff seeks to avoid certain post-petition transfers made by debtors-in-possession. B & W Enterprises, Inc. and Shoemaker Trucking filed for relief under chapter 11 of Title 11, U.S.C., on April 17, 1981. The case was converted to a liquidating bankruptcy under chapter 7 of the Code on December 15, 1981, and the chapter 7 trustee has been substituted as party plaintiff herein.

The following facts have been established by stipulation:

That Goodman Oil was paid a total of $65,798.00 by debtor-in-possession on prepetition debts;

That Krueger's Truck Stop was paid $4,361.75 by debtor-in-possession on prepetition debt;

That Trebar, Inc., doing business under the names of Boise Kenworth Sales, Bokenco, Bokenco Leasing, and Magic Valley Kenworth, was paid $36,569.95 by debtor-in-possession on prepetition debt; and

That debtor-in-possession paid Interstate Mack $53,320.08 on prepetition debt.

The parties have further stipulated as to which portions of the payments made on the prepetition debt were made with funds on hand or proceeds of accounts receivable owed as of the date of the filing of the petition for relief and which portions were paid with funds generated during the pendency of the chapter 11 proceeding.

The facts as agreed to by the parties also reflect that, following the filing of the petition for relief under chapter 11, all major trade creditors of the debtor corporations with the exception of Trebar and Interstate Mack refused to extend further credit and placed all services and goods provided on a "cash only" basis.

The officers of the debtors-in-possession and Trebar agreed to continue credit with all accounts being payable on a monthly basis and with debtors also obligated to bring current the outstanding prepetition balances for January and February, 1981. In return, the credit line with Trebar and its related entities was kept open, and during the pendency of the chapter 11 proceeding over $75,000 worth of business was transacted.

In a similar vein, debtors-in-possession agreed with Goodman Oil to continue their business relationship on the condition that debtors would pay, upon receipt of a load of fuel, not only for that current load but for a prior, prepetition load for which payment was past due as well. The fuel supply relationship with Goodman Oil continued until November, 1981, when another supplier offered a lower price per gallon.

Krueger's, the only Portland, Oregon area truck stop which would extend credit to debtors-in-possession and which also provided a fuel discount, provided some $2500–3500 per month in credit transactions during the pendency of the chapter 11 proceeding, but was paid only some $4000 on prepetition debt.

The parties have agreed that the credit arrangements for the fuel and services provided by Goodman Oil and Krueger's, and the parts and services provided by Interstate Mack and Trebar were necessary and essential to the operation of the debtors-in-possession's business following April 17, 1981. In order to secure this credit the prepetition debts to these entities were paid.

There is no stipulation that any of the goods and services in question could not have been obtained from other suppliers on a C.O.D. basis.

The debtors-in-possession made the various credit agreements summarized above without notice, hearing, or authorization under the Code or by the court.

The payment of prepetition debt with assets of the estate violates 11 U.S.C. § 549 as an unauthorized post-petition transfer of property of the estate, recoverable under 11 U.S.C. § 550. Section 549 as applicable here states "(a) . . . the trustee may avoid a transfer of the property of the estate—(1) that occurs after the commencement of the

424

case; and (2) . . . (B) that is not authorized under this title or by the court." Under 11 U.S.C. § 541, property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case, and under § 541(a)(6) property of the estate also includes

> "Proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case."

The defendants rely on three theories to avoid the effect of 11 U.S.C. § 549: (1) that the property transferred, at least in part, was not "property of the estate" ; (2) that the "necessity of payment" rule sanctions the payments made by the debtor-in-possession; and (3) that the "six months" rule gives an effective priority to these defendants so as to sanction the payments and allow their retention.

First, defendants contend that Section 541(a)(6), *supra*, excepts the funds used to pay the prepetition obligation from the definition of property of the estate, because they were "earnings from services performed by an individual debtor after commencement of the case." Defendants note that 11 U.S.C. § 101(12) says "debtor" means person, and 11 U.S.C. § 101(30) states that the word "person" "includes individual, partnership, and corporation."

■ This argument ignores the clear import of the above language. An "individual debtor", when the definitional sections are reconciled, is a debtor who is an "individual", not a single or sole individual, partnership or corporation. In the context of 541(a)(6), the use of "individual" as a synonym for "single" would be meaningless. The purpose of the exception is to insulate the income of an individual, earned by personal services after commencement of the case, from becoming property of the estate subject to administration by a trustee.

The other two defenses are interrelated; both stem from historical practices when the law of railroad reorganizations under the Bankruptcy Act and that of equity receivership intersected. The "necessity of

payment" rule and the "six months" rule are distinct but co-existing equitable doctrines. The former stemmed from *Miltenberger v. Logansport, C.&S.W.R.Co.*, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882) and its progeny, and allowed for payment of certain prepetition or prereceivership unsecured debts, or allowed a priority of sorts to similar debts immediately following the commencement of the proceeding, when such payments were indispensable to the effort at reorganization of the line. Originally, the unsecured debts so paid under order of the court were generally for materials and repairs provided on an "inter-line" basis, though the nature of payable debts was later extended to a degree by judicial decision.

The "six months" rule is distinct but similar in impact, and was engendered by *Fosdick v. Schall*, 99 U.S. 235, 25 L.Ed. 339 (1879). This principle allowed a court to authorize, in its order granting the request of a secured creditor to appoint a receiver, payment of certain unsecured debts for labor, supplies, equipment or improvements from post-receivership earnings. The authorization was equitable in nature and was based upon the theory that the debts reflected improvements on the mortgaged property as well as a means of securing an effective rehabilitation, both of which inured to the benefit of the secured creditors, and which debts should in equity be paid from funds which, but for the intervention of the receivership, would have been applied to such debts. This rule, applicable in equity receivership, was extended by Section 77(b) of the Bankruptcy Act to railroad reorganizations thereunder. The applicability of the rule was limited by reasonableness to those debts incurred immediately prior to the imposition of the rehabilitative effort, which period generally was set at six months.

Many subsidiary principles and limitations arose in regard to both "rules", and both judicial and textual discussions indicate that a great deal of confusion did and still exists over the proper delineation and functioning of these equitable exceptions to

classification and payment of claims. See generally in this regard the excellent analysis in *In re Boston & Maine Corp.*, 634 F.2d 1359 (1st Cir. 1980), *cert. den.* 450 U.S. 982, 101 S.Ct. 1518, 67 L.Ed.2d 817. See also 5 Collier on Bankruptcy (14th Ed.) ¶ 77.21, p. 615–618, especially n.29 and 6 Collier on Bankruptcy (14th Ed.) ¶ 9.13(5), p. 1633–1640, especially n.35.

It has been noted in 5 Collier on Bankruptcy (15th Ed.) ¶ 1171.02 that the Bankruptcy Code, in 11 U.S.C. § 1171(b), continues the policy of the Act which allowed unsecured claims in a railroad reorganization to gain the priority of treatment they would have received if a receiver in equity had been appointed on the date the reorganization was commenced, i.e., to allow the operation of the above noted equitable rules. This text also notes that the exact nature and operation of these rules is not well defined and would appear to be in conflict with the classification and priority provisions of Title 11 and would need to be resolved by the courts.

■ I conclude that these equitable rules are not applicable to this case. First, 11 U.S.C. § 103(g) states: "Subchapter IV of chapter 11 of this title applies only in a case under such chapter concerning a railroad." The provision above noted, 11 U.S.C. § 1171(b), which incorporates the equity receivership rules, is within the subchapter which deals with railroad reorganizations exclusively. Congress deliberately limited the application of the equitable rules to the area that created and utilized them. Though there is apparently some case law, primarily of lower federal courts, to the effect that the equity receivership rules are applicable in situations concerning entities other than railroads, especially if public or quasi-public entities, such cases arose under the Act of 1898 and Title 11 as it now exists effectively overrules such judicial extensions.

■ A fundamental premise of bankruptcy is that all creditors of the same class shall be treated equally. A chapter 11 plan must "provide the same treatment for each claim or interest of a particular class", 11 U.S.C. § 1123. Prepetition creditors are to be paid under a plan, proposed to and accepted by creditors and confirmed by the Bankruptcy Court. The creditors herein show no equitable reason why they should be granted a status which will result in payment of a greater portion of their debt to them than to other creditors of the same class, that being unsecured prepetition creditors.

■ Upon filing for relief under chapter 11, a new legal entity, known as debtor-in-possession, is created. Its rights, powers, and duties are clearly defined by the Code. See 11 U.S.C. § 1107. The creditors herein involved are substantial corporate businesses able to afford legal counsel and were or should have been aware that debtors were operating as debtors-in-possession under the limitations of the Bankruptcy Code.

■ I find that the payments made to Goodman Oil, Krueger's Truck Stop, Trebar, and Interstate Mack in the amounts stipulated are avoidable post-petition transfers of property of the estate for prepetition debt, and therefore defendants are required under 11 U.S.C. § 550(a)(1) to turn over said amounts to the plaintiff trustee. This decision constitutes conclusions of law pursuant to Bankruptcy Rule 752; the facts are stipulated. Plaintiff is requested to prepare a proposed judgment for review and execution by the court.

IT IS SO ORDERED.