In re TOM McCORMICK ENTERPRISES, INC., d/b/a J.J. Morley and d/b/a Kittyhawk Sportswear, Inc., Debtor,

John McLEMORE, Trustee, Plaintiff,

v.

CITIZENS BANK OF COOKEVILLE, Defendant.

Bankruptcy No. 380–02264.

Adv. No. 382–0036.

United States Bankruptcy Court, M.D. Tennessee, Nashville Division.

Jan. 10, 1983.

Stephen M. Miller, Denney, Lackey & Chernau, Nashville, Tenn., for plaintiff.

H.S. Barnes, Barnes, Acuff & O'Mara, Cookeville, Tenn., for defendant.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

This adversary proceeding was commenced by the trustee's complaint to avoid the defendant's postpetition appropriation of checking account deposits generated from the sale of debtor's inventory. The issue before the court is whether defendant's action is an avoidable postpetition transfer pursuant to 11 U.S.C.A. § 549 (West 1979). After consideration of the stipulations, exhibits, briefs of the parties, and applicable authority, the court finds that the application of the proceeds constitutes an avoidable postpetition transfer and that the funds should be turned over to the trustee for administration as part of the estate.

The following constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The parties stipulated to the essential facts. Tom McCormick Enterprises, Inc. ("debtor") was a business engaged in the retail sale of clothing. The debtor filed a Chapter 11 petition on July 28, 1980. On July 30, 1980, debtor filed an application for permission to incur postpetition, unsecured indebtedness not in the ordinary course of business. These funds were necessary to purchase additional inventory in order to maximize the return from a proposed "going out of business" sale. The court ap-

proved the additional indebtedness by order dated August 12, 1980. The authorization was conditioned on the approval of Citizens Bank of Cookeville ("defendant" or "bank"). The bank was the debtor's major secured creditor and held a security interest in all debtor's inventory, fixtures, and leasehold improvements pursuant to a security agreement dated May 10, 1979. The security agreement collateralized a $227,780 loan as well as an additional $100,000 line of credit. On the date of the petition, the total outstanding principal and interest owing to the bank was $282,353.75. At that time, the inventory had a retail value of approximately $329,717. For the proposed going out of business sale, the debtor's 50% markdown reduced the value of the inventory to $164,859. The order allowed unsecured indebtedness of $50,000 and provided the bank an administrative priority under 11 U.S.C.A. § 503 (West 1979). The debtor met with officials of the bank and it was agreed that the bank would make the postpetition advances and the debtor would liquidate the inventory in the manner proposed.[1] The bank set up an account against which the debtor could draw checks subject to the maximum $50,000 authorized by the court. The receipts generated from the liquidation were deposited in the same account and offset the account's overdraft status to maintain the account within the agreed credit limit.[2]

The account remained active from September, 1980 through January, 1981. By December of 1980, a cash surplus began to accumulate in the account. From the single checking account, the bank had been fully reimbursed for its postpetition ad-

1. Debtor revised its marketing strategy to extend the liquidation sale beyond the time frame originally indicated in the order to carry its business through the Christmas season. This revision in debtor's marketing strategy is evidenced by a consulting agreement entered into between debtor and Lara, Inc. dated August 12, 1980. A copy of the agreement along with proposed notice and order was filed with this court, but there is no evidence that the agreement was mailed to creditors or that the employment of Lara, Inc. was formally authorized by this court.

2. The unfortunate decision to carry out the postpetition advances and the liquidation of the debtor's pre-and postpetition inventory through a single checking account is the apparent source of this controversy. Had the debtor-in-possession segregated the inventory liquidation receipts from the postpetition operating account the bank's temptation would have been removed and this adversary proceeding might have been avoided.

vances. The bank thereafter made three separate withdrawals—$20,000 on December 10, 1980, $20,000 on December 24, 1980, and $20,000 on December 30, 1980. These sums were withdrawn without court authorization and were credited to debtor's *prepetition* indebtedness. As a result, the balance of the outstanding indebtedness owed to Citizens Bank as of January 30, 1981 was reduced to $222,353.75.

During January and February of 1981, four separate adversary proceedings were filed against the debtor. Following a motion by Belz Investment Company, John C. McLemore, Esq. was appointed trustee on February 26, 1981.[3] The trustee thereafter met with the debtor to ascertain the status of the Chapter 11 proceeding and to determine his position with respect to the proposed sale of the remaining inventory. The debtor represented that all administrative claims had been fully satisfied. Subsequent investigation, however, revealed that several claims had not been paid.[4] The trustee currently has no funds at his disposal to pay any outstanding administrative claims or to pay the costs and expenses he has incurred since his appointment.

The trustee alleges that the removal of $60,000 from the checking account of the debtor and its application to the debtor's prepetition indebtedness is an avoidable postpetition transfer. 11 U.S.C.A. § 549 (West 1979) provides that:

> (a) Except as provided in subsections (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> > (1) that occurs after the commencement of the case; and
>
> . . . .
>
> > (B) that is not authorized under this title or by the court.

The court finds that the provisions of § 549 are satisfied. The bank's unilateral appropriation of funds from the debtor-in-possession's account is not sanctioned by the very narrow exceptions contained in § 549. The appropriation of deposits was not authorized by the court's order approving the indebtedness. The order authorized unsecured indebtedness of $50,000 subject to the bank's approval and provided only that "such unsecured debt" would be treated as an administrative expense pursuant to 11 U.S.C.A. § 503 (West 1979). The order was silent on the effect the granting of additional credit would have on prepetition indebtedness, and did not authorize the bank to unilaterally foreclose on property of the estate. The court order clearly did not grant the bank a "superpriority" over other prepetition and postpetition indebtedness. Courts have been reluctant to allow the postpetition cross collateralization of pre-

---

**3.** In its initial brief, the defendant disputed the propriety of appointing John C. McLemore as trustee. 11 U.S.C.A. § 1104 (West 1979) provides in pertinent part that:

> (a) At any time after the commencement of the case but before confirmation of a plan, *on request of a party in interest*, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> . . . .
>
> (2) if such appointment is in the interest of creditors . . .

The provisions of § 1104 are satisfied in this case. Belz Investment Company, an interested party within the meaning of § 1104, requested the appointment of the trustee and the court determined that such an appointment was in the best interest of creditors. The record before the court does not reveal why an appropriate order was not immediately entered. The appointment was formally authorized by court order dated April 12, 1982, *nunc pro tunc* to February 26, 1981, the date of the original hearing. It may also be noted that contrary to the unsupported assertions of bank's counsel, the trustee does not need to seek authorization from the court to file an adversary proceeding nor can such a proceeding be filed only after conversion to a Chapter 7. *See* 11 U.S.C.A. §§ 1107, 704 and 323 (West 1979).

**4.** The court takes note that defendant disputes the legitimacy of the administrative claims. These claims may be disallowed by this court at some future date. The uncertainty of these claims, however, does not provide an exception to the trustee's avoiding power under 11 U.S. C.A. § 549 (West 1979). The validity of administrative claims will be the subject of a future hearing after recommendation by the trustee on whether or not they should be allowed. Collateral attack on the legitimacy of the claims is an improper defense to a complaint by the trustee for recovery of a postpetition transfer.

and postpetition debt and such was not authorized herein. *See In re Texlon Corp.,* 596 F.2d 1092 (2d Cir.1979); *In re Yellow Cab Co.,* 4 Bankr.Ct.Dec. (CRR) 582, 583 (Bankr.E.D.Pa.1978); *In re Borne Chemical Co.,* 9 B.R. 263 (Bkrtcy.N.J.1981).

The debtor's inventory and the proceeds of that inventory are property of the Chapter 11 estate.[5] Although bank's counsel apparently does not dispute that the deposits are property of the estate, counsel argues that any transfer which occurred was made prior to the commencement of the bankruptcy pursuant to the bank's security agreement with the debtor. The bank's security interest clearly was created before the petition, yet the transfer of property of the estate herein did not occur until well after the filing of bankruptcy. For purposes of § 549, the "transfer" at issue took place when the bank removed cash from the account maintained by the debtor-in-possession. 11 U.S.C.A. § 101(40) (West 1979). The date of this appropriation of funds is the relevant reference point for determining whether an avoidable postpetition transfer has occurred. The transfers at issue are clearly postpetition as all activity in the account occurred after the filing of the bankruptcy. The account was created postpetition. All sales and all deposits were made postpetition. The bank's removal of funds was done postpetition. To give credence to the interpretation of transfer advanced by counsel would emasculate the prohibition against postpetition transfers contained in 11 U.S.C.A. § 549 (West 1979). All the provisions necessary to avoid the transfer are present and the trustee may, therefore, recover the deposits directly from the bank pursuant to 11 U.S.C.A. § 550 (West 1979).[6]

The court recognizes that the bank claims a security interest in the proceeds of its collateral deposited to the account.[7] Nonetheless, the bank is not entitled to unilaterally appropriate the proceeds to partially satisfy its prepetition debt. The automatic stay provisions of 11 U.S.C.A. § 362 (West 1979) preclude such action.[8] The bank must either apply for court

---

5.  11 U.S.C.A. § 541 (West 1979) reads in pertinent parts as follows:
    (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:  .
    (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interest of the debtor in property as of the commencement of the case.
    . . . .
    (6) Proceeds, product, offspring, rents, and profits of or from property of the estate . . . .

6.  11 U.S.C.A. § 550 (West 1979) allows that:
    . . . [T]he trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or . . .

7.  11 U.S.C.A. § 552 (West 1979) provides that:
    . . . [I]f the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring,

rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement . . . .
The trustee disputes the extent of the bank's security interest because of the commingling of postpetition and prepetition inventory. The court cannot determine from the record what portion of the deposited proceeds came from prepetition inventory, and what proceeds came from postpetition acquisitions. The bank, however, bears the burden of tracing its security interest into those deposits or risk losing its security interest. *Cookeville Production Credit Assoc. v. Richards (In re D & R Livestock, Inc.),* Case No. 280–02555 and 280–02556, Adv. No. 281–0137, slip op. at 7 (Bankr.M.D.Tenn. May 5, 1982).

8.  11 U.S.C.A. § 362(a)(7) (West 1979) specifically operates as a stay of rights of setoff. *See Waldschmidt v. Columbia Gulf Transmission Co. (In re Fulghum Construction Corp.),* 23 B.R. 147, 153 (Bkrtcy.M.D.Tenn.1982). The courts have consistently held that the filing of the petition represents the time of cleavage. Sums deposited with a bank postpetition may not be set off against a debtor's prepetition indebtedness to that bank. *Toof v. City National Bank,* 206 F. 250 (6th Cir.1913); *Citizens Union National Bank v. Johnson,* 286 F. 527 (6th Cir.1923); *In re All-Brite Sign Service Co.,* 11 B.R. 409, 411 (Bkrtcy.W.D.Ky.1981). *See*

permission to move against the collateral or await final disposition of the estate.

In formulating a response to the trustee's arguments, bank's counsel seems to confuse 11 U.S.C.A. § 549 (West 1979), the Code provision disallowing *postpetition* transfers, with 11 U.S.C.A. § 547 (West 1979), the provision disallowing *preferential* transfers. The trustee has not alleged that the bank received a preference. The bank's proffered defense that it has not enhanced its position as a result of the application of the deposits is, therefore, irrelevant and nonresponsive.

Finally, it should be noted that the bank was not prejudiced by the postpetition extension of credit and furthermore was not without recourse and protection. The bank consented to the liquidation and all actions taken by the debtor. The bank has been fully repaid all its postpetition advances.[9] The bank could have moved the court to require the debtor to provide adequate protection before proceeding with the liquidation or could have moved the court to appoint a trustee to supervise the liquidation of assets if the bank distrusted the debtor's disposition of the collateral.[10] The bank chose to exercise neither of these options.

Accordingly, the court holds that the $60,000 together with interest accumulated at the legal rate must be turned over to the trustee for further administration.

An appropriate order will be entered.

---

*also, In re Susquehanna Chemical Corp.*, 81 F.Supp. 1 (W.D.Pa.1948) *aff'd*, 174 F.2d 783 (3rd Cir.1949); *In re Merchandise Mart of Columbia*, 79 F.Supp. 686 (E.D.S.C.1948).

**9.** The court expresses no opinion at this time regarding the propriety of the repayment of the bank's postpetition administrative claim ahead of the payment of other administrative claims in this case.

**10.** 11 U.S.C.A. § 363 (West 1979) allows a party holding an interest in property to seek adequate protection of its interest and 11 U.S.C.A. § 1104 (West 1979) (quoted above) authorizes the appointment of a trustee upon the application of an interested party.