In the Matter of ISIS FOODS, INC., Debtor.

DUBUQUE PACKING CO., Plaintiff-Appellee,

v.

John R. STONITSCH, Trustee, Defendant-Appellant.

In the Matter of ISIS FOODS, INC., Debtor.

John R. STONITSCH, Trustee, Plaintiff-Appellee,

v.

LMJ CONTAINER CORP., Defendant-Appellant.

In the Matter of ISIS FOODS, INC., Debtor.

John R. STONITSCH, Trustee, Plaintiff-Appellant,

v.

DOT FOODS, INC., Defendant-Appellee.

No. 83–0371–CV–W–8, 83–0585–CV–W–8, 83–0943–CV–W–8.

United States District Court, W.D. Missouri, W.D.

Jan. 30, 1984.

Stephen B. Sutton of Gage & Tucker, Kansas City, Mo., for Dubuque Packing Co.

Jonathan A. Margolies of Jenkins & Flanigan, Kansas City, Mo., for Stonitsch.

Warren H. Sapp, Kansas City, Mo., for LMJ Container Corp.

Robert A. Pummill, Barker, Rubin & Sonnich, Kansas City, Mo., for Dot Foods, Inc.

## MEMORANDUM OPINION

STEVENS, District Judge.

In the interest of judicial economy, the court has consolidated these three bankruptcy appeals. All three raise essentially identical legal issues arising out of the bankruptcy of Isis Foods, Inc. In addition, the bankruptcy court relied on its first decision in *Dubuque Packing Co.* as a basis for the two subsequent decisions.

The debtor, Isis Foods, Inc., filed a voluntary petition in bankruptcy under Chapter 11 on January 22, 1982, and for some period thereafter continued to operate the business as the debtor in possession. Dubuque Packing Co., LMJ Container Corp., and Dot Foods, Inc. were all suppliers to Isis. In each case, Isis purchased goods from the supplier and issued one or more checks in payment prior to bankruptcy; however, the drawee bank in all cases paid the checks a few days after Isis filed its petition in bankruptcy. In each case, the trustee sought to avoid the transfers pursuant to 11 U.S.C. § 549(a) (1982), which provides in pertinent part as follows:

(a) Except as provided in subsection (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and ...

(2)(B) that is not authorized under this title or by the court.

In *Dubuque* and *Dot,* the court below denied the trustee's claim; however, the trustee recovered in *LMJ* but only because of certain factual peculiarities which the court below deemed significant.[1] In each case, the court's rationale was that the payments merely represented a continuation of the debtor's ordinary business. The court explained that 11 U.S.C. §§ 1107 and 1108, in most general terms, authorize the debtor in possession to "operate the debtor's business." The court found that postpetition payment of a prepetition debt does not deplete the estate to the extent that payment is made reasonably contemporaneously with delivery. The court below determined that payment within forty-five days of delivery is reasonably contemporaneous[2] based on 11 U.S.C. § 547(c)(2), which provides that the trustee may not avoid as a preference a prepetition transfer in payment of a debt if

---

1. *See* note 2 *infra.*

2. Because the postpetition transfers to LMJ took more than forty-five days to complete, the court below allowed the trustee to recover

those sums. This is the right result but for the wrong reasons, as explained in the remainder of this opinion.

made in the ordinary course of business according to ordinary business terms not later than forty-five days after such debt was incurred.

Analysis of the decisions below must begin with the question of when the transfers occurred. The trustee argues the transfers occurred when the drawee bank honored the checks; his opponents suggest the transfers occurred earlier when Isis delivered the various checks to the respective payees. The court below, following the greater weight of authority, concluded that payment occurs when the bank honors a check. This court agrees with that conclusion.

■ Under bankruptcy law, " 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." 11 U.S.C. § 101(41) (1982). Under this broad definition, delivery of a check constitutes a transfer of property; however, it is necessary to examine state law to determine when the transfer is complete. *Grogan v. Chesebrough-Ponds, Inc. (In re Advance Glove Manufacturing Co.)*, 25 B.R. 521, 524 (Bkrtcy.E.D.Mich.1982). The Uniform Commercial Code, as adopted in Missouri, provides that "[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." Mo.Ann.Stat. § 400.3–409(1) (Vernon 1965). Therefore, a check "does not constitute a transfer and delivery of the fund until it is paid." *In re Duffy*, 3 B.R. 263, 265 (Bkrtcy. S.D.N.Y.1980). *Accord, Campbell v. Kimberly Clark Corp. (In re Skinner Lumber Co.)*, 27 B.R. 669 (Bkrtcy.D.S.C.1982); *Itule v. Luhr Jensen & Sons, Inc. (In re Sportsco, Inc.)*, 12 B.R. 34 (Bkrtcy.D.Ariz.1981).

Those cases which have held that a completed transfer occurs when the check is delivered to the creditor are not persuasive. *See, e.g., Rovzar v. Biddeford & Saco Bus Garage, Inc. (In re Saco Local Development Corp.)*, 25 B.R. 876, 879 (Bkrtcy.D.Me.1982); *Thomas W. Garland, Inc. v. Union Electric Co. (In re Thomas W. Garland, Inc.)*, 19 B.R. 920, 928 (Bkrtcy.E.D.Mo.1982). These two cases apparently rely on certain statements contained in legislative history; however, the court in *Advance Glove* closely examined those statements in the context of the entire statutory scheme and concluded they were the result of error, inadvertence or haste. 25 B.R. at 525–29. It is also interesting to note that *Thomas W. Garland, Inc.* holds a transfer occurs when the creditor receives the check, "so long as the check is not dishonored." 19 B.R. at 928. This exception illustrates the inherent difficulty with such a rule.

■ Under the facts presented in the present appeals, the bank paid all the checks after Isis filed for bankruptcy. Accordingly, such payments constitute postpetition transfers for prepetition debts, which are apparently subject to avoidance under section 549 unless excepted from operation of that rule.

The bankruptcy court did not suggest, nor do the parties here argue, that the exceptions to section 549 set forth in subsections (b) and (c) of that section are applicable to these cases.[3] However, the court below did cite two other provisions of the bankruptcy code as a basis for not applying section 549.

First, the bankruptcy court looked to section 547(c)(2) to support its conclusion that payments made within forty-five days of delivery are reasonably contemporaneous and not avoidable under section 549 regardless of an intervening petition in bankruptcy. This application of a defense under section 547 to a claim under section 549 is

---

**3.** The court is not impressed by Dubuque's suggestion that the bankruptcy court in considering the propriety of the payments some twelve months after the fact thereby authorized them under section 549(a)(2)(B). It would appear that proposed transfers could be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack under section 549; however, that procedure was simply not followed here.

incorrect since section 547 governs the avoidability of *pre* petition transfers whereas section 549 governs the avoidability of *post* petition transfers. *Cohen v. Kern (In re Kennesaw Mint, Inc.),* 32 B.R. 799, 803 (Bkrtcy.N.D.Ga.1983); *McLemore v. Citizens Bank of Cookeville (In re Tom McCormick Enterprises, Inc.),* 26 B.R. 437, 441 (Bkrtcy.M.D.Tenn.1983). Section 549 contains its own exceptions in subsections (b) and (c), which have been described as "very narrow exceptions." *Id.* at 439. *See also Stewart v. Black (In re Black),* 19 B.R. 468, 471 (Bkrtcy.M.D.Tenn.1982) ("The trustee may pursuant to 11 U.S.C. § 549 avoid *any* post-petition transfer of property of the estate, subject to the *narrow exceptions* set forth in § 549." (emphasis added; footnote deleted)). In short, there is simply no basis for judicial remodeling and expansion of the exceptions found in section 549.

Even if defenses under section 547 could be raised against a claim under section 549, the exception fashioned below—for "reasonably contemporaneous" postpetition payment of a prepetition debt—is faulty. In the first place, the preference exception for a "substantially contemporaneous exchange" is found in section 547(c)(1) *not* section 547(c)(2), and it is stretching to describe a transaction pending up to forty-five days as "contemporaneous." "The legislative history of § 547(c)(1), and the interpretation of it, implies that a credit transaction cannot be considered contemporaneous." *Gropper v. Samuel Kunstler Textiles, Inc. (In re Fabric Buys of Jericho),* 22 B.R. 1013, 1016 (Bkrtcy.S.D.N.Y.1982). In addition, the preference exception found in section 547(c)(2), for payments made in the ordinary course of business not later than forty-five days after the debt was incurred, is inapplicable since it is a dubious proposition to suggest that it was within the ordinary course of the debtor's business for Isis to honor checks issued before bankruptcy. "Strictly speaking, there is no debtor's business once a petition has been filed creating an estate under Section 541 and a new entity, the debtor in possession, to manage that estate." *In re Curlew Valley Associates,* 14 B.R. 506, 509 (Bkrtcy.D.Utah 1981).

Moreover, it is an affront to the policy of rehabilitation under Chapter 11 to suggest, as does Dubuque, that it would have ceased postpetition sales to Isis without payment on prepetition debts. To accept such a contention would permit those creditors most essential to the debtor's continued operation to plunder the estate and thereby to reduce greatly the likelihood of successful rehabilitation. *See B & W Enterprises, Inc. v. Goodman Oil Co. (In re B & W Enterprises, Inc.),* 19 B.R. 421 (Bkrtcy.D.Idaho 1982).

As an additional exception to section 549, the court below cited 11 U.S.C. §§ 1107 and 1108, which together authorize a debtor in possession to operate the debtor's business. Although section 549(a)(2)(B) declares that the trustee may not avoid postpetition transfers if authorized by Title 11 or the bankruptcy court, this court is not persuaded that postpetition payments made under the apparent authority of section 1108 are insulated from subsequent attack under section 549.

In the first place, and as stated above, section 549 has its own "very narrow exceptions." *Tom McCormick Enterprises, Inc.,* 26 B.R. at 439. In contrast, section 1108 speaks in broad general terms, and if construed as an exception to section 549, it would promptly devour the rule. Second, this court cannot conclude that authorizing postpetition transfers for prepetition debts is within the scope of a debtor's business. *Curlew Valley Associates,* 14 B.R. at 509 (quoted above). In reaching a conclusion to the contrary, the court below relied on its prior opinion in *Flint Hills Foods, Inc. v. Von Der Ahe (In re Isis Foods, Inc.),* 19 B.R. 329 (Bkrtcy.W.D.Mo.), *aff'd,* 27 B.R. 156 (W.D.Mo.1982). That decision involved payment for goods sold and delivered *after* bankruptcy. In contrast, these cases involve postpetition payments on prepetition debts. To equate these very dissimilar factual situations is to ignore the fundamental changes in legal rights and obligations which occur upon the filing of a bankruptcy petition. *See generally* 11 U.S.C. § 301 ("The commencement of a voluntary case under a chapter of this title constitutes an

order for relief under such chapter."); *Citizens Fidelity Bank & Trust Co. v. All-Brite Sign Service co. (In re All-Brite Sign Service Co.),* 11 B.R. 409, 411 (Bkrtcy.W.D.Ky. 1981) ("filing of the petition represents the time of cleavage"). *Flint Hills* is simply inapposite. More apt is the following statement:

> A fundamental premise of bankruptcy is that all creditors of the same class shall be treated equally. A chapter 11 plan must "provide the same treatment for each claim or interest of a particular class", 11 U.S.C. § 1123. Prepetition creditors are to be paid under a plan, proposed to and accepted by creditors and confirmed by the Bankruptcy Court. The creditors herein show no equitable reason why they should be granted a status which will result in payment of a greater portion of their debt to them than to other creditors of the same class, that being unsecured prepetition creditors.

*B & W Enterprises, Inc. v. Goodman Oil Co. (In re B & W Enterprises, Inc.),* 19 B.R. 421, 425 (Bkrtcy.D.Idaho 1982).

In summary, the postpetition payments by the debtor in possession on prepetition debts in these three appeals are subject to the trustee's power of avoidance under section 549.[4] *Id.* at 423–25; *Tom McCormick Enterprises,* 26 B.R. at 439–41. Therefore, it is

ORDERED that in case no. 83–0371–CV–W–8 the decision of the bankruptcy court is reversed, and this case is remanded for entry of an order consistent with this opinion. It is further

ORDERED that in case no. 83–0371–CV–W–8 costs will be taxed to Dubuque Packing Company. It is further

ORDERED that in case no. 83–0585–CV–W–8 the decision of the bankruptcy court is affirmed. It is further

ORDERED that in case no. 83–0585–CV–W–8 costs will be taxed to LMJ Container Corp. It is further

**4.** It is unnecessary to reach any additional arguments raised by the parties because they

ORDERED that in case no. 83–0943–CV–W–8 the decision of the bankruptcy court is reversed, and this case is remanded for entry of an order consistent with this opinion. It is further

ORDERED that in case no. 83–0943–CV–W–8 costs will be taxed to Dot Foods, Inc.

would have no effect on the ultimate result in these cases.