**In the Matter of WALTER'S DISPOSAL SERVICE, INC., Debtor.**

**WALTER'S DISPOSAL SERVICE, INC., Plaintiff,**

v.

**R.D. ATTERBURY and Joe Taylor, Defendants.**

**Bankruptcy No. 85–01256–3–11.
Adv. No. 86–0012–3–11.**

United States Bankruptcy Court, W.D. Missouri, W.D.

April 18, 1986.

---

James W. Tippin, Kansas City, Mo., for plaintiff.

James M. Reed, Kansas City, Mo., for defendant.

**8**

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT FOR DEFENDANT ON PLAINTIFF'S CLAIM

DENNIS J. STEWART, Chief Judge.

The plaintiff debtor in a chapter 11 case has filed a complaint seeking to regain a sum of $10,000 which he earlier deposited in the name of the defendant R.D. Atterbury to secure his performance under a contract for waste disposal. The action came on before the bankruptcy court for trial of its merits on March 4, 1986, whereupon James W. Tippin, Esquire, appeared as attorney for the plaintiff and James M. Reed, Esquire, appeared as counsel for the defendants.

The facts of the case were then shown to be as follows: On April 11, 1985, the debtor filed his petition for relief under chapter 11 of the Bankruptcy Code. Later, on May 3, 1985, the debtor entered into a contract with the defendants whereby he would perform certain waste disposal services under a general contract with a municipality. In accordance with the terms of the particular contract with the defendants, the debtor deposited $10,000, which, together with equal deposits put up by the defendants, was pledged in the name of Mr. Atterbury as a security deposit with the municipality to secure the performance of all three parties under the general contract. Now, the debtor seeks to reject the contract and to recover the $10,000 paid as a security deposit as property of the estate under section 542, or as property held in custody for the debtor within the meaning of section 543, or as a preference under section 547 of the Bankruptcy Code. Nothing is mentioned respecting section 549, the section which covers unauthorized postpetition transfers.

Yet, section 547 cannot apply precisely because the challenged transfer is a postpetition transfer, according to the uncontradicted proof.[1] See the decision of our district court in *Matter of Isis Foods, Inc.*, 37 B.R. 334, 336, 337 (W.D.Mo.1984), to the effect that "section 547 governs the avoidability of *pre*petition transfers whereas section 549 governs the avoidability of *post*petition transfers" and that it is therefore reversible error to apply section 547 to a postpetition transfer. Section 543 of the Bankruptcy Code applies likewise to a custodian who has custody at the commencement of the bankruptcy case or who takes custody without knowledge of the commencement of the bankruptcy case.[2] It is therefore not applicable to the case at bar.

Section 542 of the Bankruptcy Code, as it is contended to be applicable to the action at bar,[3] provides that:

"an entity, other than a custodian in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

That section, however, was not intended to apply in cases in which, under the powers granted it to conduct its ordinary business affairs under sections 1107 and 1108 of the Bankruptcy Code, debtors in possession make postpetition contracts either for performance or payment. In such instances, for the bankruptcy court to first approve the contract, either explicitly or by operation of law, and then abrogate it would amount to a signal injustice and an act exceeding the power of the bankruptcy tribunal. Although bankruptcy courts have

---

1. The uncontradicted evidence shows that the petition for relief was filed on April 11, 1985. The new deposit which is sought to be returned in this case was made on or about May 1, 1985. Even if the transfer, however, can be considered to have been a prepetition transfer, it is not recoverable by a debtor under section 522(g)(1) of the Bankruptcy Code because it was a *voluntary* transfer.

2. Again, the fact that the debtor voluntarily transferred the money to the defendant in accordance with a contract would seem to make section 543 inapplicable.

3. Section 542, however, does not purport to cover voluntary transfers made postpetition by a debtor in accordance with a contract.

the power to impair the obligation of pre-petition contracts, they do not have the power to impair postpetition contracts. If so, the bankruptcy courts would have almost limitless power—and jurisdiction. But the law which this district has applied in such a situation as that at bar is otherwise, and distinctly to the effect that the debtor in possession is liable according to the terms of the contracts which he enters into subsequent to the commencement of the action. See, e.g. *Matter of Isis Foods, Inc.,* 19 B.R. 329, 330 (Bkrtcy.W.D.Mo. 1982), affirmed, 27 B.R. 156 (W.D.Mo.1982), where it was said:

"(F)or the court initially to grant the chief executive officer this unqualified power to operate the business and the necessary power to make agreements to pay expenses as they arise and then, later, to refuse to enforce those agreements according to their clear and admitted terms would be a fraud upon those who are encouraged under the aegis of the bankruptcy court to do business with a chapter 11 debtor. The proposition is too fundamental that the bankruptcy court should not and cannot make itself a party to such a fraud. And such would stultify the purpose and intent of the ... provisions of the modern bankruptcy law, which is to encourage the rehabilitation of an honest chapter 11 debtor, rather than to permit that entity to victimize those who attempt to fulfill the purpose of rehabilitation by doing business with the chapter 11 debtor. If the agreement were not to be enforced, the word would rapidly go forth that no person might safely do business with a chapter 11 entity, regardless of the assurances given him by that entity, and all of the rest of the provisions of that chapter would accordingly become an unusable dead letter."

Under these cardinal principles, therefore, the issue resolved itself into what rights could be claimed by the debtor under the contract which it had rejected, and therefore breached by repudiation.[4] In respect of that issue, the court made the following findings of fact and conclusions of law at the conclusion of the hearing:

"The court has to be guided by the explicit and clear terms of the contract, wherein, as pertinent, it is stated as follows: 'It is further acknowledged and agreed that each party shall share equally in all interest and tax liability on said certificate of deposit and, *upon the satisfactory completion of work* specified in said contract, each party hereto shall be entitled to the return of its principal contribution minus any deduction for draws against the performance bond posted in R.D. Attebury's name for improper or insufficient performance by that party.' (Emphasis supplied.) And the evidence does not show that there is complete and satisfactory performance or completion of the work at this time. In answer to my question, Mr. Attebury testified that there were 2 years still left on this contract and that the contract had not been completed yet and that the bond still stands in accordance with this agreement between the parties. And the rejection of a contract by a debtor is a default in the contract. It is the termination of the contract by default. And this contract goes on to provide that 'in the event of default in the performance of the contract and agreement, this contract shall become null and void from that day forward and the bond above described and set out deposited with R.D. Attebury shall be and become the sole property of R.D. Attebury as liquidated damages for said default.' There has not been any evidence that the liquidated damages clause in the contract imposes a harsh forfeiture or a penalty and therefore accordingly it must, on the basis of the evidence, and the clear letter of the contract before the court, be the decision of the court to deny the complaint for relief."

---

**4.** The bankruptcy court cannot prevent repudiation of postpetition contracts, although it must see that compensation is granted to the victims of such repudiation, in accordance with the authority cited in the text of this memorandum, *Matter of Isis Foods, Inc.,* 19 B.R. 329 (Bkrtcy.W. D.Mo.1982), affirmed, 27 B.R. 156 (W.D.Mo. 1982).

It must further be stated that the evidence before this court tends to show that the liquidated damages thus imposed are not at all greatly in excess of the damages suffered by the defendant Atterbury, who, according to the uncontradicted evidence, will be compelled by the plaintiff's breach of contract to obtain a minority subcontractor to take the place of the plaintiff on or before May 1, 1986, in order to be able to go ahead with his performance on his contract with the municipality.

 It must finally be mentioned that the files and records in the underlying chapter 11 case show that the debtor has failed to gain confirmation of a proposed plan of reorganization for providing in it that this and other postpetition contracts—namely, one with the Internal Revenue Service for the payment of taxes—will be significantly impaired. The issue which now pends before the bankruptcy court is whether these chapter 11 proceedings should be dismissed or converted to straight liquidation proceedings under chapter 7 of the Bankruptcy Code. Courts of bankruptcy simply do not have the powers which would be required to permit the debtor to accomplish in chapter 11 proceedings what it seeks to accomplish—the making of postpetition contracts under the powers granted to it by the provisions of chapter 11, only to seek to abrogate them when adherence to them appears no longer to suit the fancy of the debtor. Under such circumstances, this court can only doubt that the framers of the Bankruptcy Code intended for a chapter 11 debtor to have the power to recover postpetition transfers under section 549 of the Bankruptcy Code which it made voluntarily. The statutes which purport to confer on a debtor to recover transfers made postpetition also purport to retract that power if the transfer was made voluntarily.[5] Accordingly, this court concludes that the complaint should be denied for the separate and independent reason that the debtor has no standing to recover the transfer, even if it is otherwise recoverable by a trustee.

Accordingly, for the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DE-CREED that the plaintiff's within complaint be, and it is hereby, denied. The $10,000 having been shown by the court to remain with the defendant R.D. Atterbury, that defendant's counterclaim for damages is demonstrated to be moot by reason of the denial of relief on the complaint.

5. See sections 522(g)(1), (h) of the Bankruptcy Code.