**In re DISCOUNT FAMILY BOATS OF TEXAS, INC., d/b/a Texas Boating Center, Debtor.**

**Bankruptcy No. 92–40742–DRS–7.**

United States Bankruptcy Court, E.D. Texas, Sherman Division.

Jan. 28, 1999.

Randall S. Boyd, Denton, TX, for debtors.

William Riley Nix, Nix & Weingart, P.C., Sherman, TX, for American Bank of Texas.

Warren Smith, Donahoe, Jameson & Carroll, Dallas, TX, for Transamerica Commercial Finance.

Terrie DePratt, Stutzman & Bromberg, Dallas, TX, for Bombardier Capital.

Linda Payne, Paris, TX, trustee.

## OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is American Bank of Texas (hereinafter "ABT"), successor-in-interest to and formerly doing business as American Bank of Sherman, N.A.,'s Motion To Compel Trustee To Distribute Proceeds of Sale, For Accounting And For Section 507(b) Superpriority Claim. Objections were filed by Transamerica Commercial Finance ("Transamerica") and Bombardier Capital, Inc., ("Bombardier"), secured creditors of the estate. Linda Payne, the duly appointed Chapter 7 Trustee filed a Response. At the conclusion of the hearing, the matter was taken under advisement. This opinion constitutes the Court's findings of fact and conclusions of law required by Federal Rules of Bankruptcy Procedure 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

This case presents the narrow issue of whether the Trustee should distribute $15,770.48 plus the interest which has accrued on that sum in her hands to ABT or whether Transamerica and Bombardier have some interest in the funds. The genesis of these funds is wrapped up in the long history of this case beginning with its inception as a proposed Chapter 11 reorganization which was operated by the debtor-in-possession for approximately a year before the case was converted to a Chapter 7.

At the inception of the case, ABT held a first lien deed of trust affecting the property in Sherman on which the business was operated. Bombardier and Transamerica held a security interest in the inventory of boats and supplies which they financed for the dealership. In connection with the security interest held by Transamerica and Bombardier, they were also granted a lien on the proceeds of the sale of the inventory which made the proceeds of those sales the cash collateral of Bombardier and Transamerica. Early on in this case, the debtor in possession sought and received an order from this Court signed by the Honorable C. Houston Abel authorizing the Debtor's use of the cash collateral for the following purposes:

1. Ordinary payroll and payroll taxes;

2. Reasonable daily operating expenses that are necessary for the continuation of the Debtor's business;

3. Purchase of inventory necessary to the continuing operation of the Debtor's business; and

4. Taxes and title payments necessary to effectuate the sales of boats by the Debtor.

The Court also found that the use of the cash collateral was necessary to an effective reorganization and that an effective reorganization was feasible. That judgment was entered on November 23, 1992, and was not appealed therefore it has since become a final judgment. Bombardier and Transamerica were granted replacement liens on all replacement inventory and also granted a lien to be subordinated to that of the "First Colony Bank." It is apparent that the reference to First Colony Bank was a typographical error since there is no indication that First Colony Bank ever had any interest in the deed of trust at issue and the obvious intent was to subordinate the replacement lien to the first lien of ABT.

Subsequent events dictated that the reorganization was not as feasible as the Court had determined and within a year the case was converted to a Chapter 7 liquidation proceeding and a Chapter 7 Trustee was appointed. The property was ultimately sold free and clear of all liens with liens to be referred to the proceeds pursuant to the agreement of all parties involved. The property was sold for $162,500.00 and after payment of all expenses of sale, the net proceeds of the sale was $135,752.47. The total claim of ABT which had been allowed at a hearing to which Transamerica and Bombardier were properly noticed but failed to appear was $141,266.70. Bombardier and Transamerica objected to the payment of the entire proceeds to ABT pursuant to its first lien and raised for the first time the argument that all of the payments that had been paid to ABT during the first year that this proceeding was pending as a Chapter 11 reorganization were payments improperly made without authority and therefore subject to reclamation by the Trustee. The Court, the Honorable C. Houston Abel presiding authorized the payment of all the proceeds with the exception of $15,770.48 reserving a decision on the issue of whether or not the payments were an unauthorized transfer to a later time. That is the issue before this Court for decision at this time.

## JURISDICTION

This Court has jurisdiction over the within proceeding pursuant to 28 U.S.C. § 157(a) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(1) and (b)(2)(K)(M) and (O).

## DISCUSSION

*ABT asserts that the two year statute of limitations applicable to actions under § 549 expired and therefore the transfers, if unauthorized, are unavoidable.*

■ Under 11 U.S.C. § 549(d), "An action or proceeding under this section may not be commenced after the earlier of—(1) two years after the date of the transfer sought to be avoided; or

(2) the time the case is closed or dismissed." Therefore, any avoidance action brought by the Trustee would have had to have been filed on or before approximately June 28, 1995, two years after the payments ceased.

■ Moreover, ABT opines that the Trustee had every opportunity to seek avoidance and her failure to do so reflects that she determined that avoidance of the payments was inappropriate. The Court must agree with the position taken by Bombardier and Transamerica in reliance on jurisprudence from the Ninth and Second Circuits. They argue that under § 502(d), they need only make a prima facie showing that the Bank received an unauthorized transfer. Once the establishment of an avoidable transfer is shown, then the Court is required to disallow the recipient of the unauthorized transfers claim even though the transfer could not be recovered due to the statute of limitations. *In the Matter of Mid Atlantic Fund, Inc.*, 60 B.R. 604, (Bankr.S.D.N.Y. 1986). That position is also supported by *In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598 (Bankr.E.D.Va.1985). In this case, the statute of limitations is not impacted since there is not an attempt to recover funds previously paid. In effect, the action here is to deny the claim to the extent of the money alleged to have been wrongfully paid to ABT and that is controlled by § 502(d) which contains no statute of limitation provision. Or, stated another way, this is not an action to recover funds under § 549, it is an objection to a portion of a claim and the basis for the objection is that an action could have been brought under § 549 because of unauthorized transfers of bankruptcy estate funds. That issue is controlled by 11 U.S.C. § 502(d).

■ *Primarily, Transamerica and Bombardier aver that the post-petition*

*payments made to ABT by the Debtor up until the date of the conversion to a Chapter 7 proceeding constitute transfers unauthorized under any Court order or the Bankruptcy Code and that under § 502(d) no further disbursement on ABT's claims may be made to ABT.* They also aver that the post-petition payment was made on pre-petition indebtedness of the Debtor (Bombardier's Brief at p. 2) and, therefore, should be avoidable under § 549. In addition, they claim that the funds used to make the payments were made from Transamerica's and Bombardier's cash collateral. Therefore, Transamerica and Bombardier believe that the $15,770.48 being held by the Trustee from the proceeds of the sale ought to be paid to them.

There is no question but that the payments were made from funds that constituted the cash collateral of Transamerica and Bombardier. That was the whole point of the judgment of this Court authorizing the payment. The question is whether or not the payments were, as Transamerica and Bombardier argue, unauthorized and whether or not they were post-petition payments on prepetition debt unauthorized by the Court. A reading of the Court's previous order, makes it clear that the payments to ABT which are the subject of this controversy were authorized by this Court's Order of November 23, 1992 as reasonable daily operating expenses that are necessary for the continuation of the Debtor's business for the following reasons. Although neither the Debtor nor the ABT ever sought an order specifically authorizing the monthly payments as a form of adequate protection payments or otherwise, the monthly mortgage payments were necessary and reasonable payments to be made in the ordinary course of the Debtor's business in order for the Debtor to be able to maintain its operations as contemplated under 11 U.S.C §§ 1107 and 1108. Upon the filing of a Chapter 11 petition, the debtor becomes a debtor in possession. *See* Code § 1101(1). The debtor in possession has

all the rights and powers and is obligated to perform all the functions and duties of a Chapter 11 trustee as specified in Code § 1106. *See* Code § 1107(a). In Chapter 11 any reference to A trustee is deemed to refer to the debtor in possession when a trustee has not been appointed. *See* Code § 1107(a). Code § 1108 provides that, "unless the court, on request of a party in interest and after notice and a hearing orders otherwise, the trustee may operate the debtor's business." In this instance, the Debtor, as debtor in possession, was not only obligated to pay its post-petition mortgage payments, but could hardly have been expected to be able to continue its business without paying its post-petition mortgage payments. Any reasonable person would expect rental or mortgage payments to be part of the Debtor's budget for continuing operations, along with such routine expenses as taxes, utilities, insurance and payroll.

This situation is not one of first impression. The Transamerica Brief cites to *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458 (6th Cir.1991) as an example of a Court finding a post-petition payment not authorized under §§ 1107 and 1108. However, Transamerica's Brief fails to recognize the basis of the Court's holding: the distinction between a secured and an unsecured creditor and the timing of the entry of the authorizing order of the court. In *Chattanooga,* the Chapter 7 Trustee appointed after conversion of the case from a Chapter 11 to a proceeding under Chapter 7 sought recovery of, among others, a post-petition payment made to a creditor pre-confirmation. The Bankruptcy Court found the payment was not recoverable. On appeal, the District Court reversed the Bankruptcy Court's ruling. Thereafter, the Sixth Circuit Court of Appeals affirmed the District Court. The Sixth Circuit Court found that the post-petition, pre-confirmation payment, was recoverable by the Trustee. However, the facts upon which that determination was made differ from those in the instant case.

In *Chattanooga*, the bank which received the payment was treated as a secured creditor by the Debtor and did not disclose that it was not. Only after conversion, did the Trustee discover that the bank had never properly perfected its liens against inventory. The controversial payment was made by the debtor prior to entry of an adequate protection order and prior to confirmation of the plan. The Court held that "to hold that the payment was authorized by § 1107 and § 1108, which permit a debtor in possession to operate the bankrupt business, would clothe the debtor with power to treat *unsecured* [emphasis added] creditors differently. Such a holding would run counter to one of the fundamental purposes of bankruptcy—equal treatment of unsecured creditors." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458 at 465.

The Court in *In re Ford*, 61 B.R. 913 (Bkrtcy.W.D.Wis.1986) found that payments that were made post-petition and pre-confirmation on secured debt, to keep the debtor current, were a proper exercise of the debtor's power under §§ 1107 and 1108 to operate a business, and thus could not be avoided by the post-conversion Trustee under § 549. *In re Ford* 61 B.R. 913 at 918.

This Court also takes into account that, the Debtor, as debtor-in-possession, used the Property to provide a secure environment for Transamerica's and Bombardier's collateral, i.e. boats, parts, boating equipment, thus benefitting Transamerica and Bombardier, as well as other unsecured creditors of the estate.

Based upon the foregoing Bankruptcy Code provisions and caselaw, contrary to Transamerica and Bombardier's assertions, this Court finds that the monthly mortgage payments were authorized both under the Federal Bankruptcy Code and under the Order.

■ Further, this Court finds that Transamerica and Bombardier may not complain of reasonableness, necessity, lack of knowledge or lack of consent. Transamerica and Bombardier were apprised of the outgoing payments by means of the Debtor's Monthly Operating Reports and the filed itemization of Administrative Expenses and a Budget, which included a reference to a monthly payment for the Sherman store (the Property). Their objections to same were that Kenneth Black would benefit as a result; Transamerica and Bombardier did not object to the reasonableness or necessity of the payments. Moreover, Transamerica and/or Bombardier, respectively, drafted and/or approved the Order. Had they sought to specifically preclude use of cash collateral for the mortgage payment, it should have been expressly reflected in the terms of the Order or raised before the Order became final and non-appealable. Their failure to object to such use acts to waive lack of consent under 11 U.S.C. § 363. Insofar as the payments were made post-petition by the Debtor, as a debtor in possession under the Code, in order to facilitate operations of the business in the ordinary course of that business, the Court finds that they were not post-petition payments of pre-petition debt: they were the current months' post-petition mortgage payments.[1]

---

1. In their Briefs Objecting to ABT's Motion to Compel, Bombardier and Transamerica cite to *In re Bellamah Community Development*, 139 B.R. 29 (Bankr.N.M.1992), *In re Isis Foods, Inc.*, 37 B.R. 334 (W.D.Mo.1984) and *In re B & W Enterprises*, 19 B.R. 421 (Bankr.D.Idaho.1982) aff'd. 713 F.2d 534. The cases to which Bombardier and Transamerica cite, as support of their argument that the post-petition payments were made on pre-petition debt, i.e. the promissory note, are inappropos for numerous reasons. Virtually all pertain to the avoidability under § 549 of transfers made in the form of checks, but the issue before the courts was whether checks delivered pre-petition on pre-petition indebtedness, but honored by the respective banks post-petition, ought to be avoided. The creditors in these cases argued that the transfers were made "in the ordinary course" of business. Generally, in the cases cited, the debts were unsecured and no new value was provided to the benefit of creditors or the bankruptcy estate. None of the cases involved mortgage payments. The court in *In re Isis*

■ Finally, Transamerica and Bombardier are barred by the doctrine of res judicata from complaining of the amount of ABT's claim. The amount of the claim was a matter previously litigated before the Court at the hearing on the Motion for Valuation. As mentioned in the history of this case above, and according to the Court's finding at the hearing, Transamerica and Bombardier received notice of the Motion For Valuation and of the hearing. Transamerica did not object to the Motion. Bombardier objected then withdrew its objection. The Court entered its order on May 10, 1994 and it became final and non-appealable ten days thereafter. Neither Transamerica nor Bombardier have urged reconsideration.

■ Assuming, *arguendo,* that the payments were unauthorized there would be no benefit to Transamerica or Bombardier. ABT still has a secured claim for the same amounts. The secured claim has to be paid in full prior to Transamerica and Bombardier receiving any amounts from the sale of ABT's collateral given the subordinated status of their claims. In short, just as in *In re Saunders,* 155 B.R. 405, 414 (Bankr.W.D.Tex.1993), where Judge Leif Clark found that no benefit to the estate would accrue as a result of disgorgement of a post-petition payment to a secured creditor, in this case, neither Transamerica nor Bombardier would benefit since the evidence clearly shows that even after receipt of these funds, ABT's secured claim under its first lien on the property will still not be fully satisfied. As Judge Clark stated in *Saunders,* "While the court does not condone unauthorized transfers of estate property, SMK is in no better or worse situation now by its reten-

tion of the cash collateral and part application to the outstanding secured debt." *Ibid.* at 415.

■ In addition to the request for the Trustee to pay the disputed funds to ABT, ABT requests that they be granted a super priority under § 507(b) for any remaining deficiency. This request cannot be granted. A careful reading of § 507(b) as recognized by the Fourth Circuit in *Ford Motor Credit Company v. Dobbins,* 35 F.3d 860 (4th Cir.1994) contains several requirements a creditor must satisfy before he can be accorded super priority status. There must have been adequate protection ordered by the Court and the adequate protection must have ultimately proved to have been inadequate. The creditor then must establish that he has an allowable administrative expense claim under § 503(b) which arose from either the imposition of the automatic stay under § 362 or the use, sale or lease of the collateral under § 363. ABT cannot establish these criteria. There was never any adequate protection payment ordered to ABT. There was never even a request for adequate protection until the case was converted to Chapter 7 and ABT coupled a request for adequate protection with its motion for relief from stay. If one reads the agreed order entered into by the parties and signed by the Court as a result of that motion, one finds that no adequate protection was ordered. ABT is unable to establish the first of the necessary criteria.[2]

## CONCLUSION

It is the opinion of the Court that the payments which are the subject of this

*Foods, Inc.,* 37 B.R. 334 (W.D.Mo.1984), cited by both Bombardier and Transamerica, identifies this distinction, speaking of goods delivered after the filing of a petition. *Ibid.* at 337.

**2.** It is certainly not surprising that ABT did not aggressively pursue any adequate protection payments. Until the Trustee actually sold the property at an amount less than the

amount of the Court's valuation, all parties believed ABT to be an oversecured creditor. As an oversecured creditor, adequate protection would not have been awarded. It was not until the property was sold that ABT discovered that it was actually an undersecured creditor who would have a deficiency. Unfortunately, for ABT that deficiency cannot acquire super priority status.

controversy were not post-petition payments on pre-petition debt, are not avoidable under 11 U.S.C. § 549 and were authorized by this Court's Order of November 23, 1992 as reasonable daily operating expenses that are necessary for the continuation of the Debtor's business. Therefore, 11 U.S.C. § 502(d) does not mandate any disallowance of the claim in this instance. To the extent that the funds are traceable as Bombardier's and Transamerica's cash collateral, this Court finds that the payments were authorized pursuant to the terms of the Order. The Court further directs the Trustee to pay to ABT the proceeds of the sale in the amount of $15,770.48 together with accrued interest on same, which funds were previously withheld pending further order of this Court on the question of wrongful post-petition payments. Accordingly, ABT's Motion To Compel Trustee To Distribute Proceed of Sale is GRANTED. All other requests of relief not specifically granted herein is DENIED.