**In re AMERICAN GYPSUM COMPANY, Debtor.**

**AMERICAN GYPSUM COMPANY, Plaintiff,**

v.

**GROVER TRUCKING CO., Defendant.**

**Bankruptcy No. 11–82–01253 M.**

**Adv. 83–0410 M.**

United States Bankruptcy Court, D. New Mexico.

Jan. 13, 1984.

William J. Arland, III, Albuquerque, N.M., for plaintiff.

Henry G. Coors, Albuquerque, N.M., for defendant.

### MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

■ This matter came before the Court upon the complaint of the debtor in possession, American Gypsum Company, to avoid a preferential transfer allegedly made to Grover Trucking Company. The transfers which the debtor seeks to recover are three checks delivered prior to the filing of the petition, two shipments of wallboard transferred to Grover pre-petition, and six shipments of wallboard transferred to Grover post-petition. It should be noted here that the transfer of wallboard to Grover on November 29, 1983, the day the involuntary petition was filed will be treated by the Court as a pre-petition transfer. The burden of proving all elements necessary to recovering preferential transfers is on the

debtor in possession, *Meyers v. Vermont National Bank (In re The Music House),* 5 C.B.C. 2 1240, 7 B.C.D. 882, 11 B.R. 139 (Bkrtcy.D.Vt.1980), who failed in the instant case to present any evidence as to the time of the filing of the petition or the time at which the Grover truck left the American Gypsum plant with the wallboard. Accordingly, we must assume that Grover was in possession of the wallboard at the time the petition was filed.

## I. Pre-petition Transfers

The debtor in possession seeks to recover transfers made to Grover within 90 days of the filing of the petition pursuant to Section 547(b) of the Bankruptcy Code. 11 U.S.C. § 547(b). Grover argues that the transfers fall within the exceptions to the debtor in possession's power to avoid which are enumerated in § 547(c).

That section states that:

(c) The trustee may not avoid under this section a transfer

. . . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms

11 U.S.C. § 547(c)(2)

Having found that the transfer was made according to ordinary business terms in the ordinary course of business, and the debtor having made no argument nor offered any evidence that the debt was not incurred in the ordinary course of business, the only issue remaining for decision is whether the transfers were made not later than 45 days after the debt was incurred.

According to the evidence offered at trial, Grover Trucking Company delivered gypsum wallboard from the Albuquerque plant of the debtor in possession to its customers. For each truckload of wallboard hauled by Grover, an invoice would be issued to American Gypsum showing among other things, the date the shipment was made, the weight of the shipment, the rate, and the total charge for the shipment. There were no monthly statements with a minimum amount to be paid on account, or any other form of billing by Grover other than these invoices. The evidence also showed that at the time of each transfer of a check or in the form of wallboard, a number of these invoices were outstanding. Some invoices represented shipments made more than 45 days before the transfer; some represented shipments made well within the 45 day period. Grover's evidence showed that they credited payments received to shipments made less than 45 days before the payment was made and that consequently the transfers were within the exception to the avoiding power of the debtor in possession.

The debtor's evidence showed that they made payments by totalling specific invoices, issuing a check in the amount of the total, and sending copies of the invoices along with the check. In the case of the checks at issue, all of the invoices represent shipments made more than 45 days prior to the issuance of each check.

## A. Payment by check.

The law is clear that when a debtor tenders payment to a creditor the debtor has "a right to say to which of several demands the payment shall be applied." *Schreiber v. Armstrong,* 70 N.M. 419, 423, 374 P.2d 297 (1962). If the creditor accepts the payment it has a duty to apply the payment as directed, whether it agrees with the direction or would choose instead to apply the funds differently. *Id.* Grover has argued that it had no duty to apply the payments made by check to the accompanying invoices because it had never been "clearly" instructed to do so. We find, however, that a check in the exact amount of specific invoices accompanied by copies of those invoices is clear direction to apply payment to those specific invoices, and that Grover understood it to be clear direction. This finding stems from invoices, payment of which was directed by a check written in

November 1982, which contained notes from Grover Trucking's office manager stating that the invoices were still "open" according to Grover records. We take that to mean that payments had not been applied toward these invoices because Grover had received no instruction to do so. The debtor in possession apparently agreed with this, indicating a common agreement and understanding as to the directions given by the debtor with its payments, since these invoices were paid by subsequent check. Case law on the application of payment according to a debtor's direction indicates that an invoice number on a check will suffice as clear instruction, *Gander Mountain, Inc. v. Impact Industries, Inc. (In re Gander Mountain, Inc.),* 29 B.R. 260, 10 B.C.D. 605 (Bkrtcy.E.D.Wis.1983), and we have no hesitation, given Grover's apparent understanding of the directions provided in the instant case, to find that copies of invoices, the total of which is the amount of the accompanying check constitute direction to apply the check payment to the debt represented by those invoices. Each of the checks in question were accompanied by invoices dated more than 45 days before the issuance of the check, and each check was, therefore, a transfer in payment of a debt made later than 45 days after such debt was incurred. Accordingly, the checks represent transfers which are avoidable under 11 U.S.C. § 547(b).

## B. Transfers of Wallboard.

■ In light of the law discussed above, Grover would have had a similar duty to apply the transfers of wallboard to any invoice specified by the debtor. However, no evidence was offered to suggest that the debtor gave any direction at all to Grover regarding these shipments. Accordingly, Grover was free to apply these transfers in any manner it chose, and did so by applying the value of the wallboard to invoices dated less than 45 days prior to the date of each such transfer. Therefore, the transfers of wallboard on *November 23, 1982,* fall within the provisions of 11 U.S.C. § 547(c) which remove them from the avoidance powers of the debtor in possession. These transfers are not avoidable.

## II. Post-Petition Transfers.

Post-petition gap-period transfers in involuntary bankruptcies are dealt with specifically in § 549 of the Bankruptcy Code. 11 U.S.C. § 549(c). This section states that a transfer that occurs after an involuntary petition is filed but before the order for relief is entered is valid to the extent of any value given after the filing of the petition. That value may not include satisfaction of pre-petition debt. *Id.*

■ The defendant Grover Trucking has argued that the 45 day rule in 547(c)(2) should apply to these transfers in the same manner as to the pre-petition transfers discussed above. However, § 547 specifically deals with transfers made prior to the filing of a petition and does not apply to the transfers dealt within § 549. This Court is bound, when statutory language is unambiguous to interpret statutes according to the clear meaning of their language. *United States v. Turkette* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1980). This Court has found nothing which would allow application of the § 547(c)(2) 45 day rule, and apparently the defendant found no such authority since none is offered in support of their argument on this theory. Section 303(f) of the Bankruptcy Code allows the debtor to continue to make transfers in the ordinary course of business between the filing of an involuntary petition and the order for relief, 11 U.S.C. § 303(f), but § 549(a)(2)(A) allows specifically for the avoidance of these transfers unless the exception of 549(b) applies. In other words, gap period transfers are avoidable except to the extent that the debtor receives new value during that same period. The statute is clear and this Court must apply it as it is written.

■ With that rule in mind, the Court finds that the evidence at trial showed that the debtor in possession made six transfers of wallboard to Grover during the gap period and that those transfers had a total value of $12,768.00. During that same period Grover provided services to the debtor of a total value of $2,496.00. Consequently, $2,496.00 of the transfer made to Grover is nonpreferential because new value in that

amount was received. Pursuant to § 549(a)(2)(A) and § 549(b), the remaining $10,272.00 is an avoidable transfer.

III. Conclusion

Based on the findings above, the Court concludes that the checks written by the debtor in possession on September 21, 1982, October 18, 1982, and November 16, 1982, totalling $12,584.79 are avoidable preferences, and that the transfers of wallboard made to Grover on November 23, 1982 and November 29, 1982, are valid transfers and not avoidable. Further, the transfers of wallboard after the filing of the petition are avoidable except to the extent of the new value of $2,496.00 received by the debtor in possession, resulting in post-petition avoidable transfers totalling $10,272.00.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.

An appropriate order shall enter.