In the Matter of BRIDGES ENTERPRISES, INC., Debtor.

John T. DUCKER, Trustee In Bankruptcy, Plaintiff,

v.

The ISAAC BUILDING CORPORATION, Isaac Building Company, The Isaac Corporation and Shumaker, Loop & Kendrick, Defendants.

Bankruptcy No. 3–82–03465.
Adv. No. 3–84–0188.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 20, 1984.

Howard Lubow, Michael Fain, Dayton, Ohio, for plaintiff.

Jack G. Fynes, Toledo, Ohio, for defendants.

John T. Ducker, Dayton, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the court upon a complaint filed June 19, 1984, by John T.

Ducker, Trustee in Bankruptcy, to recover an alleged avoidable transfer of $5000 to defendants, The Isaac Building Corporation, Isaac Building Company, and the Isaac Corporation (hereinafter referred to as Isaac) and their attorneys Shumaker, Loop & Kendrick (hereinafter referred to as Shumaker). Debtor Bridges Enterprises, Inc. (hereinafter referred to as Bridges) is an Ohio Corporation against which an involuntary petition of bankruptcy was filed in this court on December 15, 1982. A hearing was held on January 24, 1983 and an order for relief was granted on February 11, 1983. Defendants Isaac and Shumaker moved for summary judgment on July 23, 1984, for failure to state a claim upon which relief can be granted. Defendants aver that the requirements of a preference are not met and that a contemporaneous exchange took place which excepts the transfer from the avoidance power of the trustee.

This decision is rendered based upon the pleadings, stipulations and briefs submitted by the parties.

### FACTS

The facts are not in dispute. On or about December 8, 1982, debtor Bridges withdrew $15,000 from its savings account and transferred the money to its attorney, Steven W. King. On or about December 9, 1982, King, as agent of Bridges, deposited the $15,000 in a trust account in the Miami Citizens National Bank and Trust Company, Piqua, Ohio.

On December 9, 1982, debtor's attorney King drew a check for $5000 on the trust account, made payable to Shumaker, attorney for Isaac, and mailed it to Shumaker.

On December 15, 1982, Isaac executed a release to Bridges of all of Isaac's claims against Bridges in pending litigation in the Common Pleas Court of Defiance County, Ohio, a lawsuit which had been filed prior to 1981. Also on December 15, 1982, the $5000 check drawn by Bridges' attorney King and payable to Isaac's attorney Shumaker was deposited in an escrow account of Shumaker.

On that same day, December 15, 1982, an involuntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code was filed against Bridges by Anchor Foam Systems, Inc. and Anchor Coatings, Inc. (These two creditors allege claims amounting to $118,255 for products sold to the debtors.)

The check from Bridges to Shumaker was cleared and paid by the Miami Citizens National Bank and Trust Company on December 20, 1982.

The Trustee contends that if the issuance and delivery of the $5000 check to Isaac on December 9, 1982, constitutes a transfer of funds occurring prior to the filing of bankruptcy, the transfer is a preference voidable by the Trustee under Section 547(b). That section provides in relevant part that "(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made ...." The Trustee maintains that the claims in litigation against the debtor by Isaac constituted an antecedent obligation which is thus voidable under § 547(b)(2).

Bridges, on the other hand, maintains that (1) a debt does not arise until the debtor obtains a property interest in the release of claims, and that such property interest could not take effect until the release of claims took effect, (2) that the payment of the check within close proximity of the time of the release does not fulfill the antecedent debt requirement, and (3) that this payment was excepted from preferential transfer under § 547(c)(1) because "it was intended by the debtor and the creditor ... to be a contemporaneous exchange for new value given to the debtor."

The Trustee argues in the alternative that should it be determined that the date

of transfer is December 20, 1982, the date on which the check cleared the banks, and after the filing of the petition, the transfer was a post-petition transfer of an asset of the estate and is reclaimable under § 549(b), as a post-petition transfer for the satisfaction or securing of a debt that arose before the commencement of the case. In reply, Isaac contends the $5000 payment fits the § 549(b) exception because (1) "value" was given in exchange for the transfer, (2) such "value" consisted of a release of claims, and (3) those claims did not constitute a pre-petition debt because the sum was unliquidated and contingent upon proof of fact at trial.

## DECISION

Requisite to the determination of the several issues advanced in this motion for summary judgment is the preliminary determination as to whether the transfer occurred on December 9, 1982, the date on which the $5000 check was issued and sent, or on December 20, 1982, the date on which the check was honored by the bank.

Under bankruptcy law, " 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." 11 U.S.C. § 101(41) (1982).

Further guidance is offered by § 547(e)(1)(B), which reads, "a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."

■ Since the funds in the drawee bank could have been *garnished or attached* by a creditor on a simple contract any time prior to the honoring of the check by the bank on December 20, the transfer was not complete until that day. *See, In re Mindy's, Inc.,* 5 C.B.C.2d 1451, B.L.D. ¶ 68,674, 17 B.R. 177 (Bankr.S.D.Ohio 1982) (J. Sidman). The rationale behind this analysis is that

A check itself does not vest in the payee any title to or interest in the funds held by the drawee bank. See U.C.C. § 3–409. The check is simply an order to the drawee bank to pay the sum stated and does not constitute a transfer and delivery of the fund until it is paid. The date of payment, and not the date of delivery is crucial in determining when the preferential transfer occurred.

*Matter of Duffy,* 3 B.R. 263, 265, 6 B.C.D. 88, 1 C.B.C.2d 641 (Bankr.S.D.N.Y.1980).

■ Ohio law also mandates this conclusion. Under Ohio law, a check is deemed paid when the process of posting is complete. O.R.C. § 1304.19(A) (U.C.C. § 4–213). The term "process of posting" is then defined in O.R.C. § 1304.01(A)(18). See, *Matter of Richter and Phillips Jewelers and Distributors, Inc.* 31 B.R. 512, 514 fn. 1 (Bankr.S.D.Ohio 1983) (J. Newsome).

Accordingly, both state and federal law dictate that the December 20 date be operative, making the $5,000 check a post-petition transfer.

The Court now turns to the issue of whether such post-petition transfer can be avoided by the trustee. 11 U.S.C. Section 549, "Post-petition transactions," states in relevant part:

(a) Except as provided in subsections (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, a transfer that occurs after the commencement of such case but before the order for relief is valid against the trustee to the extent of any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case given after the com-

mencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

■ Shumaker's arguments that the trustee cannot avoid the transfer because it was a "contemporaneous transfer" and that "new value" was given are not appropriate because those exceptions apply only to Section 547 preferences. In *Matter of Hayes: George W. Ledford v. Associates Finance,* 5 B.R. 676, 678, 6 B.C.D. 1069, (Bankr.S.D.Ohio 1980), this Court stated:

> We find nothing in the Code to indicate that the trustee's avoiding powers as set forth in 11 U.S.C. §§ 544 through 549 are interdependent, either historically or by statutory interpretation. On the contrary, this Court interprets each of those sections to be self-contained, creating separate and distinct powers of avoidance to which the trustee may avail himself where appropriate. Each section treats a different type of circumstance: § 544(b) gives the trustee the rights of an unsecured creditor; § 545 gives the trustee the power to avoid certain statutory liens; § 547 gives the trustee the power to avoid preferential transfers; § 548 allows the trustee to avoid fraudulent transfers of the debtor's property; and § 549 gives the trustee the power to avoid certain post petition transfers. There may be factual circumstances where the trustee can implement two or more of these powers; however, this is not a prerequisite to their effectiveness. The trustee may employ any one of these powers alone and without reference to the other.

■ Shumaker's contention that the transfer in the case at bar occurred during the "involuntary gap," i.e., the period between the filing of a petition for involuntary bankruptcy (December 15, 1982) but before the order for relief was valid against the trustee (February 11, 1983), is correct since the transfer is deemed to have occurred on December 20, 1982. *In re*

*American Gypsum Company,* 36 B.R. 360 (Bankr.D.N.M.1984). However, this case must turn on whether that transfer fits within the exception to Section 549(b) which states that such transfers may not be avoided "to the extent of any value including services, but not including satisfaction or securing of a debt that arose before commencement of the case" was given in exchange for such transfer.

Defendant Shumaker cites *Brooks Shoe Manufacturing Co. v. Metropolitan Edison Co. (In re Naudain),* 32 B.R. 871, 873 (Bankr.E.D.Pa.1983) which quoted 4 *Collier on Bankruptcy* § 547.39 (sic) (§ 547.-38) at 547–121 (15th ed. 1983) as follows:

> The determination of when a debt is actually 'incurred' is critical. One view is that the debt is not incurred until an invoice is sent or demand for payment is made. *The probably better view is that the debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt.* Thus if goods are identified for shipment, unless the special agreement otherwise provides, the debtor has a special property interest and the debt is 'incurred'. Certainly when a debtor uses a utility the debt is incurred at the time the resource is consumed rather than when the invoice is sent (emphasis added).

This Court also quoted and agreed with this analysis of 4 *Collier on Bankruptcy* § 547.38 in *Matter of Ball,* Case No. 3–83–02145, Adv. No. 3–83–0787 (Bankr.S.D. Ohio, unreported, June 1, 1983) and *Matter of Villars,* 35 B.R. 868 (Bankr.S.D.Ohio 1983). In *Ball* the property interest acquired was the continuous use of electricity from the Ohio Edison Company and required a determination of the charges accrued within the forty-five day period excepted in § 547(c)(2). *In re Villars* at 874, this Court held that the forty-five day period began when the debtor became legally bound on a debt arising from a charge on an open account.

The defendant analogizes that Bridges' property interest arose upon the date of settlement of the state court litigation, since the debt did not really mature until, by formal agreement, a release of claims was signed. At that time the claim became a debt which was satisfied. Thus, defendants allege that there had been no pre-existing debt, only an earlier unliquidated claim.

The Court notes that the "property interest" referred to in the Collier quotation as well as *Ball* and *Villars* was used to explain the exception of § 547(c)(2) as it pertains to "ordinary course of business or financial affairs." The explanation is taken out of context and is not relevant to this § 549(b) issue.

11 U.S.C. § 101(11) defines "debt" as "liability on a claim." Section 101(4) defines a claim as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured ....

The Legislative history provides further enlightenment as to the definition of a claim:

The effect of the definition is a significant departure from present law. Under present law, "claim" is not defined in straight bankruptcy. Instead it is simply used, along with the concept of provability in section 63 of the Bankruptcy Act, to limit the kinds of obligations that are payable in a bankruptcy case. The term is defined in the debtor rehabilitation chapters of present law far more broadly. The definition in paragraph (4) adopts an even broader definition of claim than is found in the present debtor rehabilitation chapters. The definition is any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. The definition also includes as a claim an equitable right to performance that does not give rise to a right to payment. By this broadest possible definition, and by the use of the term throughout the title 11, especially in subchapter I of Chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

\*     \*     \*     \*     \*     \*

The terms [debt and claim] are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor.

H.R.Rep. 95–595, 95th Cong. 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6266, 6267.

Neither party has described the nature of the claim which precipitated the litigation in the Common Pleas Court of Defiance County, Ohio. However, the parties have stipulated that the litigation concerned an unliquidated claim. Although this claim or "right to payment" was not liquidated or fixed until December 15, 1982, the claim, by the definition of a debt, was at the outset a debt because it was a liability on a claim.

Since the Code's definition of "claim" includes unliquidated, disputed, and contingent rights to payment, and since "debt" is defined as liability on a claim, it is evident that in the instant case a debt existed at or before the date of litigation between Isaac and Bridges. Since the debt arose before the commencement of this case, the trustee may avoid the $5000 payment which secured the release of claims.

*In re Vasu Fabrics, Inc.*, 39 B.R. 513 (Bankr.S.D.N.Y.1984) is a similar case in which the trustee attempted to recover a payment made pursuant to a copyright litigation settlement agreement. Although the recovery involved a payment of an antecedent debt under 11 U.S.C. § 547(b)(2), the issue was the time at which the debt arose. The court found that the debt occurred at the time the claim was made. This court concurs with that holding.

■ Even if Shumaker's contention that a pre-petition transfer occurred on December 9, 1982, (the date of drawing and sending the check) were persuasive, the result that the Trustee could recover it would be the same. Defendant's claim that § 547(b)'s requirement that the "transfer of property of the debtor [be] for or on account of an antecedent debt owed by the debtor before such transfer was made" was not met and, alternatively, that the § 547(c)(1) "contemporaneous exchange" exception applies. This Court's holding above that the debt existed at least 23 months prior to the transfer and before the commencement of the case would render the debt antecedent and the transfer not contemporaneous, which would thus be avoidable.

Therefore, IT IS ORDERED that the $5000 payment made by Bridges to Isaac can be recovered by the Trustee.