In re BRIDGES ENTERPRISES,
INC., Debtor.

John T. DUCKER, Trustee in Bankrupt-
cy for Bridges Enterprises,
Inc., Plaintiff,

v.

FAIRMEADOWS II, an Ohio Limited
Partnership, et al., Defendants.

Bankruptcy No. 3–82–03465.
Adv. No. 3–84–0194.

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 3, 1986.

John T. Ducker, Dayton, Ohio, trust-
ee/plaintiff.

Mike Fain, Dayton, Ohio, for plaintiff.

Michael J. Boylan, Cincinnati, Ohio, for
defendants.

## PROCEDURAL POSTURE

WILLIAM A. CLARK, Bankruptcy
Judge.

## PROCEDURAL POSTURE

On June 26, 1984 the Plaintiff, John T.
Ducker (Trustee for the bankruptcy estate
of Bridges Enterprises, Inc.), filed a com-
plaint to recover a preferential transfer or
to compel turnover of estate property
against the defendants, Fairmeadows II

(An Ohio Limited Partnership), Armstrong Companies, Michael J. Boylan and Snowden Armstrong. Currently before the court are motions for summary judgment filed by both the plaintiff and the defendants. From the pleadings, stipulations, affidavits and a deposition, it appears that the following facts are not in dispute: .

1) On January 29, 1981 Fairmeadows II and Armstrong Companies filed suit against the debtor, Bridges Enterprises, Inc. and two other defendants in the Court of Common Pleas in Butler County, Ohio. In that suit Fairmeadows II and Armstrong Companies sought damages against Bridges Enterprises, Inc. in the amount of $200,000.00 for breach of contract and breach of various warranties.

2) On November 1, 1982 Bridges Enterprises, Inc. entered into a judicially approved settlement agreement before a state court judge. By the terms of the settlement Bridges Enterprises, Inc. was to pay $10,000.00 to Fairmeadows II.

3) On December 8, 1982 Stephen W. King, an attorney representing Bridges Enterprises, Inc., received from Bridges a check in the amount of $15,000.00, payable to himself. Mr. King deposited the check in his trust account with the Miami Citizens National Bank and Trust Company of Piqua, Ohio.

4) On the same day, in order to effect the settlement between Bridges Enterprises, Inc. and Fairmeadows II, Mr. King issued a check, drawn on his trust account, to Michael J. Boylan and Snowden Armstrong in the amount of $10,000.00.

5) Michael J. Boylan received the check, endorsed it, and forwarded it to Snowden Armstrong.

6) After endorsing the check, Snowden Armstrong deposited the check in a checking account of Fairmeadows II.

7) The check was then processed through the banking system, and although it had reached the Miami Citizens National Bank and Trust Company by 8:30 A.M. on December 15, 1982, it was not posted to the account of the issuer, Mr. King, until the evening of December 15th.

8) On December 15, 1982 at 3:24 P.M., an involuntary petition in bankruptcy was filed against the debtor, Bridges Enterprises, Inc.

9) Snowden Armstrong is a general partner of Fairmeadows II, which is an Ohio Limited Partnership.

10) Armstrong Companies is a proprietorship owned by Susan M. Armstrong, but managed by Snowden Armstrong. Although Armstrong Companies manages apartments owned by Fairmeadows II, it has no legal interest in Fairmeadows II.

11) Michael J. Boylan is an attorney for Fairmeadows II and Armstrong Companies, but has no interest in either of the two entities. Further, Mr. Boylan's law firm periodically billed Fairmeadows II for the performance of legal work, but had no financial interest in the proceeds of the $10,000.00 check issued by Stephen W. King on behalf of Bridges Enterprises, Inc.

## CONCLUSIONS OF LAW

The instant matter may be decided on the basis of the rationale set forth in *Matter of Bridges Enterprises, Inc.*, 44 B.R. 979 (Bankr.S.D.Ohio 1984), which was decided by the Hon. Charles A. Anderson, former United States Bankruptcy Judge for this court.[1]

 Initially, we find that the transfer of $10,000.00 from the debtor to Fairmeadows II occurred on the evening of December 15, 1982, and not at some earlier date.

Since the funds in the drawee bank could have been garnished or attached by a creditor on a simple contract any time prior to the honoring of the check by the bank ... the transfer was not complete until that day. *Id.* at 982.

---

1. *Matter of Bridges Enterprises, Inc.*, involved the same debtor as the present adversary proceeding and dealt with the remaining $5,000.00 of the $15,000.00 sent to Attorney Stephen W. King by the debtor.

Ohio law also mandates this conclusion. Under Ohio law, a check is deemed paid when the process of posting is complete. O.R.C. § 1304.19(A) (U.C.C. § 4–213) *Id.*

■ Since the check issued by Stephen W. King was not posted to his account until the evening of December 15, 1982, the transfer of the money did not take place until that time. Therefore, both the transfer and the filing of the involuntary petition in bankruptcy against the debtor took place on the same day, although the latter event preceded the former by mere hours.

In *In re Energy Co-op. Inc.,* 32 B.R. 680, 683 (Bankr.N.D.Ill.1983), the court found it "unequivocally clear ... that fractions of a day should be considered when adjusting the rights of a debtor and its creditors in the bankruptcy context." It has also been observed that "[a]lthough fractions of a day are generally disregarded in court proceedings, they are scrupulously observed in determining the claims of rival creditors and in related matters pertaining to debtor-creditor relationships." *In re Monzon,* 27 B.R. 50 (Bankr.S.D.Fla.1983). *Accord: Matter of Holiday Meat Packing, Inc.,* 30 B.R. 737 (Bankr.W.D.Pa.1983). We conclude that the transfer from the debtor to Fairmeadows II was a post-petition transfer of assets of the debtor's estate.

The relevant portion of 11 U.S.C. § 549, which pertains to post-petition transactions, reads as follows: [2]

(a) Except as provided in subsections (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, a transfer that occurs after the commencement of such case but before the order for relief is valid against the trustee to the extent of any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

■ Clearly, the post-petition transfer of $10,000.00 to Fairmeadows II was made in satisfaction of a debt, which arose before the commencement of the involuntary case, and therefore the trustee may avoid the transfer pursuant to 11 U.S.C. § 549.

■ Defendants seek to avoid liability under the provisions of 11 U.S.C. § 550 [3] by claiming that they are not initial transferees of the check, but that Stephen W. King, an attorney for the debtor, is the initial transferee. Plaintiff asserts that not only is defendant Fairmeadows II an initial transferee of the check, but that the attorney for Fairmeadows II, as a joint payee, is also an initial transferee of the check and

---

**2.** This is the version of the statute as it read prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984.

**3.** The relevant portion of 11 U.S.C. § 550 as it read prior to the Bankruptcy Amendments and Federal Judgeship Act of 1984 was a follows:
**§ 550. Liability of transferee of avoided transfer.**
(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.
(b) The trustee may not recover under subsection (a)(2) of this section from—
(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee.

liable for a return of the funds. Although both attorneys, Stephen W. King and Michael J. Boylan, were "transferees" of the funds within the technical meaning of that term, we believe that to find either of them an "initial transferee" for purposes of 11 U.S.C. § 549 or 11 U.S.C. § 550 is simply too literal a reading of the Bankruptcy Code.

Both attorneys functioned as agents of their respective clients and served as the conduit to effect a settlement between the debtor and Fairmeadows II. Fairmeadows II was the intended beneficiary and the ultimate recipient of the $10,000.00 and, therefore, it is liable for the return of the funds.[4]

Even if either attorney was deemed an initial transferee of the funds, under the specific circumstances of this case, this court would exercise its equitable discretion to prevent the trustee from recovering the transfer from either attorney. *See In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334 (Bankr.S.D.N.Y.1983).

For the foregoing reasons it is hereby ORDERED, ADJUDGED AND DECREED that judgment be granted in favor of the plaintiff against defendant Fairmeadows II in the amount of $10,000.00 plus interest pursuant to 28 U.S.C. § 1961(a) from June 26, 1984.

IT IS FURTHER ORDERED that plaintiff's complaint be dismissed against the remaining defendants.

---

**4.** There is no evidence that Michael J. Boylan had a contingency fee arrangement with Fairmeadows II. We specifically make no ruling regarding liability for the return of an avoided transfer where an attorney received a portion of the transferred funds pursuant to a contingency fee contract.