In the Matter of HER MAJESTIES STOUT SHOP, INC., Debtor.

Jary C. NIXON, Trustee, Plaintiff,

v.

INTERNAL REVENUE SERVICE and Don M. Stichter, Defendants.

Bankruptcy No. 83–424.
Adv. No. 83–681.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 10, 1986.

Jary C. Nixon, Tampa, Fla., pro se.

George T. Rita, Washington, D.C. for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 7 case is a Complaint, filed by Jary C. Nixon, (Trustee) who seeks a Turnover Order of certain funds concededly held by the United States Government, the Internal Revenue Service (IRS). The Trustee also seeks an identical Order of Turnover against Don M. Stichter (Stichter), who is counsel of record for Her Majesties Stout Shop, Inc., the Debtor involved in this Chapter 7 case.

The procedural history and background of this entire adversary proceeding is extremely convoluted and complex and it is certainly in need of an explanation in order to put the issues in an understandable posture. This is unfortunate because in retrospect the remaining issue for consideration should have become evident at the very outset.

The adversary proceeding was commenced on June 29, 1983, when the Trustee filed his Complaint for Turnover. On July 15, 1983, Stichter answered the Complaint and promptly filed a Motion for Summary Judgment on August 26, 1983. The Complaint was answered by the IRS on November 21, 1983. In due course the matter was scheduled for a pretrial conference and also scheduled the Motion for Summary Judgment filed by Stichter, which was heard on December 6, 1983, which Motion was granted and Stichter was dismissed as a defendant from this adversary proceeding. On December 16, 1983, the IRS filed a Notice of Appeal concerning this Court's Order entered on December 6, 1983.

Thereafter, this Court entered two additional separate orders on January 11, 1984. The first order vacated the Order of December 6, 1983, the order which was challenged by the IRS, and the second order struck the Notice of Appeal filed by the IRS on the basis that it was rendered moot.

On February 24, 1984, the Trustee filed his own Motion for Summary Judgment at this time against the IRS. On May 4, 1984, this Court entered an order and granted the Trustee's Motion for Summary Judgment against the IRS and ordered the IRS to turnover to the Trustee the sum of $2,000.00 within 30 days from the date of entry of the order. On May 9, 1984, the IRS filed its second Notice of Appeal challenging the order entered by this Court on the Trustee's Motion for Summary Judgment. For reasons which are not clear, the Trustee filed a renewed Motion for Summary Judgment on November 8, 1984.

However, the progress of this adversary proceeding came to a sudden halt on October 19, 1984, when the District Court Order reversed all orders heretofore entered by this Court, including the order which granted the Trustee's Motion for Summary Judgment originally entered December 6, 1983. The District Court reversed this Court on the basis that the order was improper in as much as the IRS did not receive a proper notice of the hearing nor the Trustee's Motion for Summary Judgment, and therefore, it was denied due process.

In addition, the District Court also ruled that during the pendency of the Notice of Appeal filed by the IRS, this Court had no jurisdiction to deal with any matters involved in this adversary proceeding and for this reason all acts taken by this Court subsequent to December 6, 1983, were a nullity and they were vacated but then were remanded to this Court for further proceedings albeit, without the District Court deciding any part of the merits of the controversy between the Trustee and the IRS.

On June 12, 1985, after receiving the Mandate from the District Court, this Court entered an order and denied the Renewed Motion for Summary Judgment filed by the Trustee. On March 24, 1986, this Court held a pretrial conference, at which time the Trustee and the IRS stipulated the facts which they agreed to be relevant to the resolution of the issue and submitted the matter for resolution by this Court based on the stipulated facts which are as follows:

Prior to the commencement of this Chapter 7 case the debtor corporation was indebted to the IRS in the amount of $2,794.98 for unpaid payroll taxes. On or about March 1, 1983, the Debtor sold some of its racks, fixtures and inventory items used in the Debtor's business for $2,000.00. Upon receipt of the purchase price, the Debtor turned this money over to Mr. Stichter, its attorney of record, who in turn forwarded the same to the IRS in order to pay in part the Debtor's liability for unpaid payroll taxes. The payment by Stichter was made by check which was mailed to the IRS on March 3, 1983, or three hours before Stichter filed a petition for relief in this Court on behalf of the Debtor. The $2,000.00 check was received by the IRS in due course, and it was negotiated by the IRS on March 16, 1983, or subsequent to the commencement of the case. On June 29, 1983, as noted earlier, the Trustee filed his Complaint for Turnover and sought to recover the $2,000.00 initially from Stichter, or in the alternative, from the Government.

Based on the foregoing undisputed facts, it appears that the only issue which remains for resolution by this Court is whether or not the transfer of the $2,000.00 occurred when the check was mailed by Stichter to the IRS, i.e., or three hours before the commencement of the case, or when the check was, in fact, negotiated by the IRS on March 16, that is postpetition. Thus, it is evident that the time the funds were transferred is dispositive of a trustee's claim to the funds because if the transfer occurred postpetition, the monies were still property of the estate on the date of the commencement of a case, and therefore, it was a postpetition transfer, the validity of which must be determined by reference to § 549 of the Bankruptcy Code, which deals with postpetition transactions.

 Considering the first issue first, there is no question that the payment of a debt by a check is a transfer within a definition of that term as defined by § 101(48) of the Bankruptcy Code. It is equally clear, however, that the payment of a debt by Stichter did not occur when the check was mailed simply because a check itself does not vest title in the payee or grant any interest to the payee in the funds held by a drawee bank. The proposition is basically controlled by § 3–409(1) of the Uniform Commercial Code, as adopted by this state, Florida Statute 673.3–409, which provides in pertinent part as follows:

A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

The acceptance of a draft by a drawee is defined by § 3–410(1) as adopted by this state by 673.3–410, which provides as follows:

673.3–410 Definition and Operation of Acceptance

Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification.

Based on the foregoing, it is clear that the check is nothing more than an order directed to the drawee bank to pay the sum stated and does not constitute a transfer and delivery of the funds until it is accepted by a drawee and paid. From these it follows that the date of the payment of a check is not the date of the mailing or delivery but the date the check is accepted and honored. And this is dispositive to determine when the transfer had actually occurred.

As noted *supra*, the $2,000.00 was mailed on March 3, 1983, and was not negotiated until March 16, 1983, which occurred postpetition. Many courts have held that the payment of a check by the drawee rather than the sending or receipt of the check constitutes the transfer under the Bankruptcy Code. See *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir. 1974); *In re Sportsco, Inc.*, 12 B.R. 34 (Bankr.D.Ariz.1981); *In re Duffy*, 3 B.R. 263 (Bankr.S.D.N.Y.1980).

Therefore, the transfer of the $2,000.00 to the IRS occurred on March 16, 1983. The transfer was postpetition and the $2,000.00 was property of the estate under

Bankruptcy Code § 541. In essence, the $2,000.00 was a post petition payment of a pre-petition claim, which is improper.

Having concluded that the transfer of the $2,000.00 occurred postpetition, the validity of the transfer must be tested with reference to the provisions of § 549 of the Code which provides as follows:

§ 549 Postpetition Transactions.

(a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate

(1) made after the commencement of the case; and

(2)(A) that is authorized only under § 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the Court.

Since it is clear that this transfer was not authorized under § 303(f) (Good faith transfers prior to the entry of an Order for Relief in an involuntary case) or under § 542 (Postpetition payment of debt owed to the Debtor made in good faith), this is clearly an avoidable transfer, and the Trustee's entitled to the relief it seeks against the IRS. A separate final judgment will be entered in accordance with the foregoing.