In re BY–RITE DISTRIBUTING, INC., a Utah corporation.

Robert H. CLENDENEN, Trustee, Plaintiff/Appellee,

v.

VAN DYK OIL COMPANY, INC., a California corporation, Defendant/Appellant.

No. 87–C–0477S.

United States District Court, D. of Utah, C.D.

July 27, 1988.

Vernon L. Hopkinson, Kevin R. Anderson, Watkiss & Campbell, Salt Lake City, Utah, for plaintiff/appellee.

Edward J. McDonough, Berman & O'Rorke, Salt Lake City, Utah, for defendant/appellant.

## BANKRUPTCY DECISION

SAM, District Judge.

Appellant Van Dyk Oil Company, Inc. (Van Dyk) seeks reversal of the bankruptcy court's decision to void payment to Van Dyk of two checks delivered by the debtor By–Rite Distributing, Inc. (By–Rite) prior to filing bankruptcy but paid thereafter by debtor's bank. 11 U.S.C. § 549 allows the bankruptcy trustee in certain situations to avoid transfers of estate property made after commencement of the case.

On November 2, and November 6, 1984, By–Rite, a gasoline retailer, issued checks to Van Dyk, its wholesale supplier, as advance payment for the purchase of gasoline. Van Dyk did not intend to extend credit to By–Rite. On November 8, 1984, By–Rite filed Chapter 11 bankruptcy. Thereafter, on November 13 and 19, 1984, debtor's bank paid the checks. On October 15, 1985, the case was converted from a Chapter 11 reorganization to a Chapter 7 liquidation.

On November 12, 1986, nearly two years from the dates the checks were cashed, the trustee filed a complaint to recover the two checks as post-petition transfers under 11 U.S.C. § 549(a). Van Dyk filed a motion to dismiss on the grounds that once a check is honored, the time of payment relates back to the time the check was delivered. Therefore, Van Dyk argues payment was made prior to commencement of bankruptcy and more than two years before filing of the complaint to recover the checks, beyond the two-year statute of limitations set forth in 11 U.S.C. § 549(d).

The bankruptcy court decided, for purposes of determining whether these checks were post-petition transactions which the trustee may avoid under 11 U.S.C. § 549(a), the transfers occurred on November 13 and 19, 1984 when the checks were paid by the debtor's bank. Accordingly, the bankruptcy court concluded that the trustee's complaint to recover post-petition transfers was filed within the statute of limitation of § 549(d) and was meritorious because transfers occurred after the petition was filed. Van Dyk's motion to dismiss was denied and judgment was entered against Van Dyk for the amount of the checks, $19,058.00, plus interest.

■ The primary issue before the court is whether post-petition payments of checks, delivered pre-petition to the payee, constitute voidable post-petition transfers

under 11 U.S.C. § 549(a). The secondary issue involves the two year statute of limitations set forth in 11 U.S.C. § 549(d). If the transfers occurred at the time the checks were delivered, and not at the time the checks were paid, then the § 549(a) claim is time-barred. Upon review of applicable bankruptcy statutes, however, the court concurs in the bankruptcy court's conclusion that voidable, post-petition transfers occurred on the dates the checks were paid and therefore the trustee's § 549 claims were timely filed.

11 U.S.C. § 549(a) provides in pertinent part as follows:

> (a) Except as provided in subsection (b) and (c) of this section (inapplicable to this case), the trustee may avoid a transfer of property of the estate—
> (1) that occurs after the commencement of the case; and
>
> .    .    .    .    .
>
> (2) (B) that is not authorized under this title or by the court. (Parentheses added)

■ The four relevant inquiries required by § 549(a) in this case are 1) was there a transfer, 2) of estate property, 3) after commencement of the bankruptcy, 4) which was not authorized under the bankruptcy code or approved by the court. If so, then the transfer is voidable. These inquiries are interrelated and therefore should be analyzed collectively under the bankruptcy code.

11 U.S.C. § 101(50) defines a transfer to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with property or with an interest in property." Under this broad definition, disbursement of funds from the debtor's checking account falls within the statutory definition of a transfer. § 549 caselaw, however, attempts to establish a single transfer date as between pre-petition delivery and post-petition payment of a check. *See In re Trois Etoiles, Inc.,* 78 B.R. 237 (Bankr. 9th Cir.1987); *In re Her Majesties Stout Shop, Inc.,* 65 B.R. 145 (Bankr. M.D.Fla.1986); *In re Wilson,* 56 B.R. 74 (Bankr. E.D.Tenn. 1985); *In re Bridge Enters., Inc.,* 44 B.R.

979 (Bankr. S.D.Ohio 1984); *In re Isis Foods, Inc.,* 37 B.R. 334 (W.D.Mo.1984). Until *Etoiles,* each § 549 case, choosing a single transfer date as between the date of delivery or the date of payment of a check, held the transfer occurred upon payment because under U.C.C. § 3–409, adopted in nearly all states, a check does not assign funds to the payee or establish drawee liability until the drawee accepts it.

*Etoiles* rejects this conclusion. In *Etoiles,* the debtor, paying for the preparation of a Chapter 11 bankruptcy petition, gave counsel a check for $2,000, the day before the petition was filed. Five days later debtor's bank honored the check. The bankruptcy court invalidated payment of the check as a post-petition transfer of estate property under 11 U.S.C. § 549. The Bankruptcy Appellate Panel reversed, rejecting § 549 caselaw because it relied upon state law, specifically U.C.C. § 3–409. The court, relying upon *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 370, 65 S.Ct. 405, 408, 89 L.Ed. 305 (1945), reasoned that "what constitutes a transfer and when it is complete within the meaning of the Code is necessarily a federal question, since it arises under a federal statute intended to have uniform application throughout the United States." *Id.* at 238. The court then held that so long as a pre-petition check is presented within a reasonable time and is not dishonored, post-petition payment does not constitute a post-petition transfer, voidable under § 549, because the transfer was complete upon delivery of the check. In the interests of uniformity and consistency, the court applied interpretations of when a transfer was complete which evolved under § 547, governing avoidability of pre-petition transfers.

Although application of the *Etoiles* decision to the instant case would relieve Van Dyk of the burden of disgorging funds received in November 1984 for gasoline delivered to By–Rite, the reasoning of *Etoiles* is not persuasive. *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1945) does not preclude reference to state law to resolve the issue of when a transfer is complete for § 549 pur-

poses. Unlike the instant case, *McKenzie* interpreted a federal statute which specifically set forth the criteria for determining when a transfer was deemed to be complete. Nonetheless, the court applied state law. The federal statute interpreted therein provided that a "transfer shall be deemed to have been made at the time when it became so far perfected that no bona fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein ..." *McKenzie v. Irving Trust Co.*, 323 U.S. at 370, 65 S.Ct. at 408 (citing the former 11 U.S.C. § 60(a)). In the absence of controlling federal statute, the court looked to state law to determine when a creditor or bona fide purchaser could acquire rights in the property transferred by the debtor. The absence of controlling federal statute as to when a transfer became sufficiently perfected led the court to conclude that federal law adopted the state standards "which control the effectiveness of a transfer" and "likewise determine the precise time when a transfer is deemed to have been made or perfected." *Id.* This was true despite the court's apparent recognition of both the statutory intent to have uniform application throughout the country and the potential for state law to vary on the applicable details.

Moreover, applying federal law to the instant case requires a result contrary to *Etoiles.* The issue of whether a transfer is complete upon delivery or payment of a check for § 549 purposes necessarily involves the issue of whether funds in the debtor's checking account upon filing a bankruptcy petition constitute property of the estate. For this reason alone, § 547 analysis as to when a transfer is complete is inadequate for § 549 purposes. 11 U.S. C. § 541 defines property of the estate in relevant part as follows: The commencement of a case under ... this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.... Legal or equitable interests in property at the time of filing are determined by state law. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). California, like other states, recognizes the debtor's property interest in the balance of his checking account, regardless of outstanding checks. The following analysis of *In re Wilson*, 56 B.R. 74, 76 (Bankr.E.D.Tenn.1985) applies in California which, like Tennessee, has adopted the Uniform Commercial Code.

It is clear that property of the estate was parted with when the (pre-petition) check was honored (post-petition). A bank's relationship to that of its depositor is a debtor-creditor relationship, with the customer as creditor and the bank as the debtor. In the eyes of the law, the customer has "lent" the amount in his account to the bank and the bank is obliged to pay it out on order. J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 648 (2d ed. 1980). Under the applicable state law "[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." *Tenn. Code Ann.* § 47–3–409(1) (1979). (*Cal. Com. Code* § 3409 (West 1964)).

Since a check is not an assignment of a customer's funds but merely represents the customer's order upon the bank to pay a specified sum to the order of a certain person, a number of events between issuance and presentment might interfere with the normal payment procedure. These include (1) knowledge or notice of the customer's death, incompetency, or bankruptcy, (2) the customer's stop payment order, (3) legal process (e.g. garnishment), (4) setoff by the drawee bank. *See generally Tenn. Code Ann.* §§ 47–4–303, –403, –405 (1979). (*Cal. Com. Code* §§ 4303, 4403, 4405 (West 1964)). *See also* White & Summers, *supra*, at 692....

It is without question that, even after a check is written, the funds representing the bank's debt to its customer re-

main, until presentment and payment of the check, subject to the drawer's control, to garnishment, and to setoff. (Parentheses, including California Commercial Code citations, added)

Consequently, when the checks were paid, property of the estate was disbursed in payment of a pre-petition debt.

■ Having concluded that payment of the checks constituted post-petition transfers of estate property, the sole remaining inquiry under § 549 is whether the transfers were authorized under the bankruptcy code or approved by the court. The parties do not contest the bankruptcy court's finding that "there was no authorization either by the court or by statute" (Record at 27) for post-petition payment of the checks. Appellant does not argue that the exceptions to § 549 set forth in subsections (b) and (c) apply. Rather, appellant asserts that the contemporaneous exchange defense available under § 547, to avoid return of pre-petition transfers, should apply similarly under § 549 where a check delivered pre-petition is honored post-petition. *In re Isis Foods, Inc.,* 37 B.R. 334 (W.D. Mo.1984) and *In re Bridges Enters., Inc.,* 44 B.R. 979 (Bankr.S.D.Ohio 1984) persuasively address this issue. In *Isis,* a factually similar case, the court reasoned as follows:

This application of a defense under section 547 to a claim under section 549 is incorrect since section 547 governs the avoidability of *pre* petition transfers whereas section 549 governs the avoidability of *post* petition transfers. *Cohen v. Kern (In re Kennesaw Mint, Inc.),* 32 B.R. 799, 803 (Bkrtcy.N.D.Ga.1983); *McLemore v. Citizens Bank of Cookville (In re Tom McCormick Enterprises, Inc.),* 26 B.R. 437, 441 (Bkrtcy.M.D.Tenn. 1983). Section 549 contains its own exceptions in subsections (b) and (c), which have been described as "very narrow exceptions." *Id.* at 439. *See also Stewart v. Black (In re Black),* 19 B.R. 468, 471 (Bkrtcy.M.D.Tenn.1982). ("The trustee may pursuant to 11 U.S.C. § 549 avoid *any* post-petition transfer of property of the estate, subject to the *narrow exceptions* set forth in § 549." (emphasis added; footnote deleted)). In short, there is simply no basis for judicial remodeling and expansion of the exceptions found in section 549.

Even if defenses under section 547 could be raised against a claim under section 549, the exception fashioned below—for "reasonably contemporaneous" postpetition payment of a prepetition debt—is faulty. In the first place, the preference exception for a "substantially contemporaneous exchange" is found in section 547(c)(1) *not* section 547(c)(2), and the interpretation of it, implies that "a credit transaction cannot be considered contemporaneous." *Gropper v. Samuel Kunstler Textiles, Inc. (In re Fabric Buys of Jericho),* 22 B.R. 1013, 1016 (Bkrtcy.S.D.N.Y.1982). In addition, the preference exception found in section 547(c)(2), for payments made in the ordinary course of business not later than forty-five days after the debt was incurred, is inapplicable since it is a dubious proposition to suggest that it was within the ordinary course of the debtor's business for Isis to honor checks issued before bankruptcy. "Strictly speaking, there is no debtor's business once a petition has been filed creating an estate under Section 541 and a new entity, the debtor in possession, to manage that estate." *In re Curlew Valley Associates,* 14 B.R. 506, 509 (Bkrtcy.D.Utah 1981). Moreover, it is an affront to the policy of rehabilitation under Chapter 11 to suggest, as does Dubuque, that it would have ceased postpetition sales to Isis without payment on prepetition debts. To accept such a contention would permit those creditors most essential to the debtor's continued operation to plunder the estate and thereby to reduce greatly the likelihood of successful rehabilitation. *See B. & W. Enterprises, Inc. v. Goodman Oil Col (In re B & W. Enterprises, Inc.),* 19 B.R. 421 (Bkrtcy. D.Idaho 1982).

*In re Isis Foods, Inc.,* 37 B.R. at 336–37.

Furthermore, *In re Bridges Enters., Inc.,* 44 B.R. 979, 983 quotes *In re Hayes: George W. Ledford v. Associates Finance,*

5 B.R. 676, 678, 6 B.C.D. 1069 (Bankr.S.D. Ohio 1980), as follows:

We find nothing in the Code to indicate that the trustee's avoiding powers as set forth in 11 U.S.C. §§ 544 through 549 are interdependent, either historically or by statutory interpretation. On the contrary, this Court interprets each of those sections to be self-contained, creating separate and distinct powers of avoidance to which the trustee may avail himself where appropriate. Each section treats a different type of circumstance: § 544(b) gives the trustee the rights of an unsecured creditor; § 545 gives the trustee the power to avoid certain statutory liens; § 547 gives the trustee the power to avoid preferential transfers; § 548 allows the trustee to avoid fraudulent transfers of the debtor's property; and § 549 gives the trustee the power to avoid certain post petition transfers. There may be factual circumstances where the trustee can implement two or more of these powers; however, this is not a prerequisite to their effectiveness. The trustee may employ any one of these powers alone and without reference to the other.

Accordingly, this court concludes that payment of the checks on November 13 and November 19, 1984 constituted post-petition transfers of estate property avoidable under § 549 because the narrow exceptions set forth therein do not apply. Since the transfers occurred on November 13 and November 19, 1984, the § 549(d) statute of limitations did not run prior to the filing of the trustee's complaint on November 12, 1986. For reasons set forth herein, the decision of the bankruptcy court is affirmed and the case is remanded to the bankruptcy court for further proceedings.